**PISANELLI BICE PLLC**
Todd L. Bice, Bar No. 4534
TLB@pisanellibice.com
Robert A. Ryan, Bar No. 12084
RR@pisanellibice.com
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone:  (702) 214-2100

**HUNTON ANDREWS KURTH LLP**
Ann Marie Mortimer (pro hac vice)
amortimer@HuntonAK.com
Jason J. Kim (pro hac vice)
kimj@HuntonAK.com
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone:  (213) 532-2000
Facsimile:  (213) 532-2020

**HUNTON ANDREWS KURTH LLP**
Neil K. Gilman (pro hac vice)
ngilman@HuntonAK.com
2200 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20037-1701
Telephone:  (202) 955-1500
Facsimile:  (202) 778-2201

Attorneys for Defendant
MGM RESORTS INTERNATIONAL

*Hunton Andrews Kurth LLP*
*550 South Hope Street, Suite 2000*
*Los Angeles, California 90071-2627*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:  MGM Resorts International Data Breach Litigation<br><br>This document relates to:  All actions. | CASE NO.:  2:20-CV-00376-GMN-NJK<br><br>**DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT** |

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant MGM Resorts

2   International ("MGM") hereby moves this Court for an order dismissing this lawsuit in its entirety.

3    This motion is made on multiple grounds. *First*, Plaintiffs fail to allege cognizable injury or

4   damages—a prima facie element of their claims. *Pruchnicki v. Envision Healthcare Corp.*, 845 F.

5   App'x. 613, 614 (9th Cir. 2021). *Second*, Plaintiffs' negligence claim is barred by the economic loss

6   rule. Moreover, Plaintiffs fail to allege the breach of any legal duty owed by MGM. *Third*,

7   Plaintiffs' negligent misrepresentation claim is barred by the economic loss rule. In addition,

8   Plaintiffs fail to allege any affirmative misrepresentation by MGM. *Fourth*, Plaintiffs' implied

9   contract claim fails because Plaintiffs do not and cannot allege any agreement concerning data

10  security, much less a breach thereof. *Fifth*, Plaintiffs' unjust enrichment claim fails because they

11  have not and cannot show they lack adequate legal remedies. *Sonner v. Premier Nutrition Corp.*,

12  971 F.3d 834, 845 (9th Cir. 2020). *Sixth*, Plaintiffs' statutory claims fail for multiple reasons,

13  including Plaintiffs' failure to plead their fraud-based claims with particularity, failure to plead

14  cognizable injury or damages, and for reasons specific to the individual claims, including a lack of

15  standing to pursue them and the failure to plead any duty of disclosure owed by MGM.

16   This motion is based upon the attached Memorandum of Points and Authorities, all the

17  pleadings and papers on file herein, and on such other evidence and argument as may be presented at

18  any ordered hearing on this matter.

19  Dated: June 1, 2021                  **PISANELLI BICE PLLC**

20

21                                By:    ___/s/ Robert A. Ryan_____
                                      Todd L. Bice
22                                    Robert A. Ryan
                                      Attorneys for Defendant
23                                    MGM RESORTS INTERNATIONAL

24

25                                **HUNTON ANDREWS KURTH LLP**
                                      Ann Marie Mortimer
26                                    Neil K. Gilman
                                      Jason J. Kim
27                                    Attorneys for Defendant
                                      MGM RESORTS INTERNATIONAL
28

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED
CLASS ACTION COMPLAINT

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND ...................................................................................................4

    A.    The Security Incident And The Limited Scope Of Information Involved....................4

    B.    The Named Plaintiffs And Their Nonexistent "Injuries" ...............................5

III.  PLAINTIFFS' PLEADING BURDEN....................................................................11

IV.   PLAINTIFFS FAIL TO STATE VIABLE CLAIMS FOR RELIEF AND THEIR COMPLAINT SHOULD BE DISMISSED................................................................12

    A.    Applicable Law.................................................................................................12

    B.    Plaintiffs Fail To Allege The Requisite Injuries And Damages With Respect To Their Claims ...........................................................................14

    C.    Plaintiffs' Negligence Claim Fails...................................................................19

    D.    Plaintiffs' Negligent Misrepresentation Claim Fails .......................................21

    E.    Plaintiffs' Implied Contract Claim Fails..........................................................22

    F.    Plaintiffs' Unjust Enrichment Claim Fails.......................................................23

    G.    Plaintiffs' Statutory Claims Are Deficient.......................................................24

    H.    Plaintiffs' Statutory Claims Otherwise Fail ....................................................26

        1.    The Nevada Consumer Fraud Act Claim Fails..................................26

        2.    The California Unfair Competition Claim Fails.................................28

        3.    The California Consumer Legal Remedies Act Claim Fails ..............29

        4.    The California Customer Records Act Claim Fails ............................30

        5.    The Connecticut Unfair Trade Practices Act Claim Fails .................30

        6.    The Georgia Deceptive Trade Practices Act Claim Fails ..................31

        7.    The New York Section 349 Claim Fails ............................................31

        8.    The Ohio Deceptive Trade Practices Act Claim Fails.......................31

        9.    The Oregon Unlawful Trade Practices Act Claim Fails ....................32

        10.   The Oregon Consumer Information Protection Act Claim Fails.................32

V.    CONCLUSION.................................................................................................33

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Ables v. Brooks Bros. Grp.,*
5      2018 WL 8806667 (C.D. Cal. June 7, 2018) ...............................................16, 17, 18

6

*Adams v. Antonelli Coll.,*
      304 F. Supp. 3d 656 (S.D. Ohio 2018) .............................................................15
7

*Adams v. Johnson,*
8      355 F.3d 1179 (9th Cir. 2004) .........................................................................12

9

*In re Adobe Sys., Inc. Privacy Litig.,*
10      66 F. Supp. 3d 1197 (N.D. Cal. 2014) ..............................................................18

11

*Alexander v. Falk,*
      2019 WL 3717802 (D. Nev. Aug. 7, 2019) .......................................................26
12

*Ames v. Caesars Ent. Corp.,*
13      2019 WL 1441613 (D. Nev. Apr. 1, 2019) ........................................................23

14

*Anderson v. Kimpton Hotel & Rest. Grp., LLC,*
15      2019 WL 3753308 (N.D. Cal. Aug. 8, 2019) .....................................................30

16

*Antman v. Uber Techs., Inc.,*
      2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) ..............................................17, 19
17

*Antman v. Uber Techs., Inc.,*
18      2018 WL 2151231 (N.D. Cal. May 10, 2018) ....................................................22

19

*Ashcroft v. Iqbal,*
      556 U.S. 662 (2009) .............................................................................11, 12, 28
20

*Baba v. Hewlett-Packard Co.,*
21      2010 WL 2486353 (N.D. Cal. June 16, 2010) ...................................................28

22

*Beck v. McDonald,*
23      848 F.3d 262 (4th Cir. 2017) ...........................................................................18

24

*Bell Atlantic Corp. v. Twombly,*
      550 U.S. 544 (2007) .............................................................................11, 12, 28
25

*Bustos v. Dennis,*
26      2020 WL 5763603 (D. Nev. Sept. 28, 2020) .....................................................20

27

*Catrett v. Landmark Dodge,*
28      560 S.E. 2d 101 (Ga. Ct. App. 2002) ...............................................................31

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

ii

2:20-CV-00376-GMN-NJK

*Cherny v. Emigrant Bank*,
604 F. Supp. 2d 605 (S.D.N.Y. 2009)............................................................................18

*Cleary v. News Corp.*,
30 F.3d 1255 (9th Cir. 1994) .......................................................................................13

*Voters for Animal Rts. v. D'Artagnan, Inc.*,
2021 WL 1138017 (E.D.N.Y. Mar. 25, 2021) ............................................................31

*Daugherty v. American Honda Motor Co. Inc.*,
144 Cal. App. 4th 824 (2006) ......................................................................................29

*Davenport v. Homecomings Financial, LLC*,
2014 WL 1318964 (D. Nev. Mar. 31, 2014) ...............................................................25

*Dawson v. Blockbuster, Inc.*,
2006 WL 1061769 (Ohio Ct. App. 8th Dist. Mar. 16, 2006) ......................................25

*Donohue v. Apple, Inc.*
871 F. Supp. 2d 913 (N.D. Cal. 2012) .........................................................................29

*Eisen v. Porsche Cars N.A., Inc.*,
2012 WL 841019 (C.D. Cal. Feb. 22, 2012)................................................................26

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
362 F. Supp. 3d 1295 (N.D. Ga. 2019) ......................................................26, 27, 29, 30

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
Case No. 1:17-md-02800-TWT ...................................................................................27

*Garcia v. Fry*,
186 F. Supp. 3d 228 (D. Conn. 2016) ..........................................................................30

*Gardiner v. Walmart, Inc.*,
No. 20-cv-04618-JSW (N.D. Cal. Mar. 5, 2021)................................................ *passim*

*Gascho v. Global Fitness Holdings, LLC*,
883 F. Supp. 2d 677 (S.D. Ohio 2012) ........................................................................31

*In re Google, Inc. Privacy Policy Litig.*,
2015 WL 4317479 (N.D. Cal. July 15, 2015)..............................................................15

*H&H Pharm., LLC v. Chattem Chemicals, Inc.*,
2020 WL 376648 (D. Nev. Jan. 23, 2020) ...................................................................24

*HLD Enters v. Michelin N. Am., Inc.*,
2004 WL 2095738 (N.D. Ga. June 29, 2004)...............................................................25

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018).................................................................................29, 30

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED
CLASS ACTION COMPLAINT

*Holbrook v. Louisiana-Pacific Corp.*,
    553 Fed. Appx. 493 (6th Cir. 2013)................................................................31

*Holly v. Alta Newport Hosp., Inc.*,
    2020 WL 1853308 (C.D. Cal. Apr. 10, 2020) ...................................................5, 17

*Horton v. Nelson*,
    288 P.3d 967 (Or. Ct. App. 2012).................................................................32

*Huynh v. Quora, Inc.*,
    2020 WL 7408230 (N.D. Cal. June 1, 2020) ...................................................29

*Jackson v. Loews Hotels, Inc.*,
    2019 WL 6721637 (C.D. Cal. July 24, 2019) ...............................5, 16, 17, 18

*JL Beverage Co., LLC v. Beam Inc.*,
    2017 WL 5158661 (D. Nev. Nov. 7, 2017) .....................................................24

*Jones v. Midland Funding, LLC*,
    755 F. Supp. 2d 393 (D. Conn. 2010)............................................................14

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ...............................................................25, 28, 30

*Kuhns v. Scottrade, Inc.*,
    868 F.3d 711 (8th Cir. 2017) ...................................................................22, 23

*Kwikset Corp v. Superior Court*,
    246 P. 3d 877 (Cal. 2011) .........................................................................28

*Landow v. Bartlett*,
    2019 WL 8064074 (D. Nev. Nov. 18, 2019) ...............................3, 21, 22, 25

*Laws. Gen. Motors Corp. v. Eighth Judicial Dist. Court*,
    134 P.3d 111 (Nev. 2006) .........................................................................13

*Lopez v. One Reverse Mortg., LLC*,
    464 P.3d 128 (Nev. App. 2020) .................................................................20

*Mack v. LLR, Inc.*,
    2018 WL 6927860 (C.D. Cal. Aug. 15, 2018)................................................25

*Mauer v. Am. Home Mortg. Acceptance, Inc.*,
    2011 WL 6752631 (D. Nev. Dec. 23, 2011)..................................................25

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .....................................................................13

*Mizrahi v. Wells Fargo Home Mortg.*,
    2010 WL 2521742 (D. Nev. June 16, 2010)..................................................22

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED
CLASS ACTION COMPLAINT

*Moore-Davis Motors, Inc. v. Joyner*,
  556 S.E.2d 137 (Ga. Ct. App. 2001) ......................................................................31

*Nevada Power Co. v. Trench France, S.A.S.*,
  2020 WL 6689340 (D. Nev. Nov. 12, 2020) ....................................................19, 21

*In re NJOY, Inc. Consumer Class Action Litig.*,
  2014 WL 12586074 (C.D. Cal. Oct. 20, 2014).......................................................25

*Parker v. Shaker Real Estate, Inc.*,
  705 A.2d 210 (Conn. 1998) ....................................................................................14

*Pats., LLC v. Indus. Revolution, Inc.*,
  2010 WL 11508006 (N.D. Ga. Dec. 9, 2010)..........................................................15

*Patton v. Experian Data Corp.*,
  2018 WL 6190349 (C.D. Cal. Jan. 23, 2018) ..........................................................32

*Pelman ex rel. Pelman v. McDonald's Corp.*,
  396 F. 3d 508 (2nd Cir. 2005)..................................................................................31

*Peters v. St. Joseph Servs. Corp.*,
  74 F. Supp. 3d 847 (S.D. Tex. 2015) .......................................................................18

*Pruchnicki v. Envision Healthcare Corp.*,
  845 F. App'x. 613 (9th Cir. 2021) .................................................................. *passim*

*Pruchnicki v. Envision Healthcare Corp.*,
  439 F. Supp. 3d 1226 (D. Nev. 2020) ............................................................ *passim*

*Razuki v. Caliber Home Loans, Inc.*,
  2018 WL 2761818 (S.D. Cal. June 8, 2018).....................................................20, 23

*Razuki v. Caliber Home Loans, Inc.*,
  2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) ................................................ *passim*

*Reed v. Dynamic Pet Prod.*,
  2016 WL 3996715 (S.D. Cal. July 21, 2016) ..........................................................15

*Ruiz v. Gap, Inc.*,
  2009 WL 250481 (N.D. Cal. Feb. 3, 2009) .............................................................16

*Ruiz v. Gap, Inc.*,
  622 F. Supp. 2d 908 (N.D. Cal. 2009) .....................................................................14

*Rushing v. Williams-Sonoma, Inc.*,
  2020 WL 6787135 (N.D. Cal. Oct. 8, 2020)..............................................................4

*Sallie Holly v. Alta Newport Hosp., Inc.*,
  2020 WL 6161457 (C.D. Cal. Oct. 21, 2020)......................................................1, 14

**Hunton Andrews Kurth LLP**
**550 South Hope Street, Suite 2000**
**Los Angeles, California 90071-2627**

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED
CLASS ACTION COMPLAINT

*Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*,
  125 Nev. 818 (2009) ........................................................................................................19

*Schwartzco Enters. LLC v. TMH Mgmt., LLC*,
  60 F. Supp. 3d 331 (E.D.N.Y. 2014) ................................................................................31

*Soffer v. Five Mile Cap. Partners, LLC*,
  2013 WL 638832 (D. Nev. Feb. 19, 2013) .......................................................................26

*Sharma v. Volkswagen AG*,
  2021 WL 912271 (N.D. Cal. Mar. 9, 2021).......................................................................24

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ..................................................................................... *passim*

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014)...............................................................................14

*Stasi v. Inmediata Health Grp. Corp.*,
  2020 WL 2126317 (S.D. Cal. May 5, 2020)......................................................................17

*Stewart v. Electrolux Home Prod., Inc.*,
  304 F. Supp. 3d 894 (E.D. Cal. 2018)...............................................................................26

*Svenson v. Google Inc.*,
  2016 WL 8943301 (N.D. Cal. Dec. 21, 2016)...................................................................15

*Taddeo v. Taddeo*,
  2011 WL 4074433 (D. Nev. Sept. 13, 2011).....................................................................25

*Terlesky v. Fifth Dimension, Inc.*,
  2015 WL 7254189 (S.D. Ohio Nov. 17, 2015)..................................................................32

*Terracon Consultants W., Inc. v. Mandalay Resort Grp.*,
  125 Nev. 66 (2009) ....................................................................................................20, 21

*Thomas v. Kimpton Hotel & Rest. Grp., LLC*,
  2020 WL 3544984 (N.D. Cal. June 30, 2020)...................................................................22

*Torres v. Rothstein*,
  2020 WL 2559384 (D. Nev. May 20, 2020).......................................................................12

*In re Trilegiant Corp., Inc.*,
  11 F. Supp. 3d 82 (D. Conn. 2014)...................................................................................25

*Ebeid ex rel. U.S. v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010) ............................................................................................12

*In re Uber Techs., Inc., Data Sec. Breach Litig.*,
  2019 WL 6522843 (C.D. Cal. Aug. 19, 2019)..............................................................17, 19

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

vi

*Williams v. Bayview Loan Servicing, LLC*,
   2016 WL 8711209 (E.D.N.Y. Jan. 22, 2016) ...................................................................15

*Yastrab v. Apple Inc.*,
   173 F. Supp. 3d 972 (N.D. Cal. 2016) ...........................................................................14

*In re Zappos.com, Inc.*,
   2013 WL 4830497 (D. Nev. Sept. 9, 2013) ..........................................................3, 22, 24

**Statutes**

Cal. Bus. & Prof. Code § 17204 ...........................................................................14, 28

Cal. Civ. Code § 1750 ...........................................................................................24, 30

Cal. Civ. Code § 1798.81.5 ..........................................................................................30

Conn. Gen. Stat. § 42-110b ..........................................................................................30

Conn. Gen. Stat. § 42-110g ..........................................................................................30

Ga. Code Ann. § 10-1-372 ............................................................................................31

Nev. Rev. Stat. § 603A.040 ..........................................................................................27

Nev. Rev. Stat. § 603A.210 ..........................................................................................27

Nev. Rev. Stat. Ann. § 41.600 ................................................................................ *passim*

N.Y. Gen. Bus. Law § 349 ............................................................................................31

Ohio Rev. Code § 4165.01 .......................................................................................31, 32

Ore. Stat. § 646.605 ......................................................................................................32

Oregon Unlawful Trade Practices Act ...........................................................................32

Ore. Stat. § 646A.607 ...................................................................................................32

**Other Authorities**

Fed. R. Civ. Proc. 9 ..................................................................................................... *passim*

Restatement (Second) of Conflict of Laws § 145 ..........................................................13

Restatement (Second) of Torts § 551 ............................................................................22

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED
CLASS ACTION COMPLAINT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs filed this lawsuit after Defendant MGM Resorts International ("MGM") announced an intrusion into a third-party cloud server that contained a limited amount of information for certain previous hotel guests (the "Security Incident").  Apparently, Plaintiffs believe MGM's announcement alone gives rise to a plausible lawsuit.  It does not.

As Plaintiffs concede, the Security Incident involved primarily "phone book" information—*i.e.*, "names, addresses, phone numbers, email addresses, and dates of birth."  Compl. ¶ 2.  It comes as no surprise, therefore, that Plaintiffs cannot show any cognizable harm or damages resulting from the alleged disclosure of that information—a necessary element of each of their claims.[1]  The mere assertion of harm that is neither compensable nor plausibly related to the Security Incident falls far short of the pleading mark.

In fact, the Ninth Circuit just affirmed the dismissal of a similar data breach class action based on the plaintiff's "fail[ure] to adequately allege damages stemming from a data breach of [defendant] by third parties."  *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x. 613, 614 (9th Cir. 2021) (holding the mere misappropriation of personal information does not establish compensable damages).  And the Court should do so here, just like *Pruchnicki* and other court decisions in this Circuit involving similar claims.  *See, e.g.*, *Gardiner v. Walmart, Inc.*, No. 20-cv-04618-JSW, at 10:27-11:1 (N.D. Cal. Mar. 5, 2021) (ECF No. 43) (dismissing data breach class action because "Plaintiff's vague and conclusory allegations regarding his purported injuries are insufficient to establish the damages element required for his … claims"); *Sallie Holly v. Alta Newport Hosp., Inc.*, 2020 WL 6161457, at *5 (C.D. Cal. Oct. 21, 2020) (finding plaintiff's "conclusory and vague allegations insufficient to establish that she suffered actual damages as a result of the data breach"); *Razuki v. Caliber Home Loans, Inc.*, 2018 WL 6018361, at *1 (S.D. Cal.

---

[1] Driver's license numbers, passport numbers, or military identification numbers of a few individuals—less than 0.004%—appeared in the compromised database.  All of those individuals were notified.  None of the named Plaintiffs, however, claims to have been among those individuals.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   Nov. 15, 2018) (finding plaintiff's damages allegations "too conclusory and vague to satisfy the

2   pleading standard in a complex, large-scale, data-breach class action").

3           Unable to plead cognizable damages or harm, Plaintiffs instead claim nonexistent,

4   theoretical, and non-cognizable harms like "spam," "diminution in value of PII" or "lost time"—the

5   types of alleged harms the Ninth Circuit held less than six weeks ago are not compensable.  *See*

6   *Pruchnicki*, 845 F. App'x at 614 (lost time reviewing credit reports, responding to spam mail, or

7   claims related to diminution in value of PII not compensable).  Some Plaintiffs also claim self-

8   inflicted and wholly unnecessary "damages" in the form of credit monitoring expenditures, even

9   though courts have regularly held that the "phone book" information at issue cannot support the

10  required finding of a certainly imminent risk of future harm.  Moreover, each of these Plaintiffs

11  allegedly initiated credit monitoring services *before* the Security Incident even took place.

12  Plaintiffs' purely elective choice to enroll in monitoring services even before the Security Incident

13  was announced is not "reasonable" or "necessary" and does not qualify as a compensable harm.

14  And the only Plaintiff who claims to have suffered unreimbursed monetary loss fails entirely to

15  show how the same could be accomplished using only "names, addresses, phone numbers, email

16  addresses, and dates of birth."  Compl. ¶ 2.  Indeed, Plaintiffs do not even attempt to plead *any* facts,

17  much less plausible facts, linking the harm alleged to the "phone book" data elements taken in the

18  Security Incident.  As a result, "none of [Plaintiffs'] purported damages are sufficient to plausibly

19  allege a claim upon which relief can be granted."  *Pruchnicki v. Envision Healthcare Corp.*, 439 F.

20  Supp. 3d 1226, 1236 (D. Nev. 2020), aff'd, 845 F. App'x at 614 (dismissing similar data breach

21  class action involving disclosure of "name, date of birth, social security number, driver's license

22  number, and unidentified 'financial information'" for lack of damages).  While Plaintiffs' inability to

23  plead cognizable harm and damages is dispositive on its own, the flaws in Plaintiffs' complaint run

24  far deeper:

25          Negligence:  Plaintiffs' negligence claim begins and ends with the economic loss rule, as

26  Plaintiffs have not and cannot show any type of physical harm (*i.e.*, personal injury or property

27  damage).  Even if the claim survived the economic loss rule (and it does not), Plaintiffs nonetheless

28  fail to allege the breach of any legal duty.  Plaintiffs must do more than mouth the words

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

"inadequate data security" to allege the breach of a legal duty.  And here, Plaintiffs' "vague allegations do not establish how [MGM] failed to take reasonable measures to protect customer's data." *Gardiner*, No. 20-cv-04618-JSW, at 10:6-7; *see also Razuki*, 2018 WL 6018361, at *2 ("The Court has already acknowledged that it may be difficult to definitively show Caliber's practices were insufficient prior to discovery, but again, he needs something more than what he's pleading now.").

Negligent misrepresentation:  Plaintiffs' negligent misrepresentation claim also fails under the economic loss rule.  Beyond that still, the "tort of negligent misrepresentation 'requires an affirmative false statement.'" *Landow v. Bartlett*, 2019 WL 8064074, at *3 n.26 (D. Nev. Nov. 18, 2019).  And here, Plaintiffs plead no affirmative false statement by MGM.

Implied contract:  Plaintiffs fail entirely to plead the nature and scope of any implied contract, as they must.  To the contrary, the "only allegations alleged to give rise to any contract are that customers agreed to pay money for" hotel rooms, which MGM provided.  *In re Zappos.com, Inc.*, 2013 WL 4830497, at *3 (D. Nev. Sept. 9, 2013).  Beyond that, Plaintiffs fail to adequately plead the nature and scope of any implied promise beyond simply asserting it exists.  Even if Plaintiffs had pled an agreement to which MGM had assented (and they do not), Plaintiffs fail to allege a breach of that agreement.  Plaintiffs claim MGM breached some vague, undefined, and unspoken promise to implement "reasonable data security measures." Compl. ¶ 188.  Again, however, Plaintiffs' "vague allegations do not establish how [MGM] failed to take reasonable measures to protect customer's data." *Gardiner*, No. 20-cv-04618-JSW, at 10:6-7; *Razuki*, 2018 WL 6018361, at *2.  The claim fails.

Unjust enrichment:  Plaintiffs' unjust enrichment claim is barred by virtue of their inability to plead a lack of legal remedies.  Just last year, the Ninth Circuit held as a matter of federal law that plaintiffs cannot pursue equitable remedies unless they can show they lack an adequate remedy at law.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 845 (9th Cir. 2020).  Even if Plaintiffs could survive *Sonner*, they fail nonetheless to plead facts showing MGM has been unjustly enriched.  Plaintiffs did not "bestow[] any gratuitous benefit upon" MGM.  *In re Zappos*, 2013 WL 4830497, at *5.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Consumer protection statutory claims:  Plaintiffs assert multiple statutory claims that sound in fraud.  Plaintiffs, however, fail to plead them with the requisite particularity to meet Rule 9(b)'s heightened pleading standard.  In vague and conclusory fashion, Plaintiffs claim MGM "failed to disclose the material fact that its data security practices were inadequate to reasonably safeguard consumers' PII."  *See*, *e.g.*, Compl. ¶ 208.  Plaintiffs, however, do not describe the "practices" MGM should have employed, describe how MGM's "practices" fell short, plead any facts establishing MGM's knowledge of such "facts," or allege that MGM made contrary representations to Plaintiffs regarding those "facts."  The mere fact that "hackers accessed MGM's cloud server and stole consumers' PII" does not equate to particularized allegations that "MGM failed to implement and maintain reasonable security measures" and defrauded Plaintiffs in connection with the same.  *Id.* ¶ 210.

Beyond that still, Plaintiffs' statutory claims suffer additional infirmities, including but not limited to a lack of statutory standing and the lack of any duty of disclosure owed by MGM with respect to their omissions theory, as set forth more fully below.

To proceed, Plaintiffs must plead more than the mere fact of the Security Incident and MGM's announcement thereof.  At an absolute minimum, Plaintiffs must plead MGM's fault, as well as injury that is both compensable and causally related to the Security Incident.  Plaintiffs have not and cannot plead either.  Accordingly, the Court should dismiss their complaint.[2]

## II.   BACKGROUND

### A.   The Security Incident And The Limited Scope Of Information Involved

Plaintiffs brought this lawsuit in connection with a "cyber-attack at MGM on or around July 7, 2019" (the "Security Incident").  Compl. ¶ 1.  As Plaintiffs admit, the Security Incident primarily

---

[2] MGM lacks sufficient evidence to move to compel arbitration of Plaintiffs' claims at this juncture pursuant to the arbitration provision in MGM's online Terms of Use.  Nonetheless, this will be an issue for many putative class members, and one that raises a host of individualized questions concerning, among other things, the manner in which putative class members booked MGM hotel rooms throughout the relevant timeframe.  At this juncture, however, a motion to compel arbitration against unnamed class members would be premature.  *Rushing v. Williams-Sonoma, Inc.*, 2020 WL 6787135, at *3 (N.D. Cal. Oct. 8, 2020).  MGM nonetheless expressly reserves all rights without waiver to do so if the Court does not grant its motion to dismiss.

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED
CLASS ACTION COMPLAINT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

was limited to the compromise of "names, addresses, phone numbers, email addresses, and dates of birth." *Id.* ¶ 2. "For certain guests, the stolen information also included driver's license numbers, passport numbers, or military identification numbers." *Id.* Plaintiffs do not claim to have given their "passport numbers" or "military identification numbers" to MGM. And only Plaintiffs Bohlim, Hwynn, Sedaghatpour, Simkin, and Dvorak claim they "presented" their driver's licenses to MGM. *Id.* ¶¶ 263, 337. Those Plaintiffs, however, do *not* claim MGM notified them that their driver's license numbers actually appeared in the compromised data set. (In fact, they did not.) Indeed, they do not even allege that MGM recorded their driver's license.

## B.   The Named Plaintiffs And Their Nonexistent "Injuries"

Plaintiffs strive mightily to manufacture cognizable injury and compensable damages that are traceable to the Security Incident, to no avail:

Ryan Bohlim (California): Bohlim claims he has "experienced an increase in spam and phishing phone calls and emails at the same phone number and email address he used for his MGM stays." Compl. ¶ 10. Similarly, Bohlin further claims that, "[i]n response to learning of the [Security Incident], he obtained a copy of his credit report to review it for fraud, and he changed several of his passwords." *Id.* Likewise, Bohlim claims he "spent time monitoring his financial and other accounts more closely than he otherwise would have." *Id.* But these are precisely the type of "damages" that the Ninth Circuit rejected in *Pruchnicki* and other cases. *See, e.g., Holly v. Alta Newport Hosp., Inc.*, 2020 WL 1853308, at *6 (C.D. Cal. Apr. 10, 2020); *Jackson v. Loews Hotels, Inc.*, 2019 WL 6721637, at *4 (C.D. Cal. July 24, 2019).

Duke Hwynn (California): Hwynn claims he "experienced an increase in spam and phishing phone calls and emails at the same phone number and email address he used for his MGM stays." Compl. ¶ 11. Hwynn further claims that, "[i]n November 2020, criminals perpetrated a ransomware attack on [his] personal computer," which he "downloaded onto his computer after he opened an unfamiliar email, which was sent to the same email address he used for his MGM stays." *Id.* As a result, Hwynn claims he "had to purchase a new computer, which cost approximately $2,100." *Id.* Hwynn also claims he "spent a significant amount of time as a result of the [Security Incident] and its aftermath, including signing up for credit freezes with multiple credit reporting agencies, resetting

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1  various passwords, monitoring his financial and other accounts more closely than he otherwise

2  would have, and backing up his computer multiple times as a precaution." *Id.*  Finally, Hwynn

3  claims he "had to take unpaid time off from work due to the efforts he devoted to these collective

4  issues," which allegedly resulted in "several hundred dollars in aggregate unpaid wages." *Id.*

5  With respect to the phishing claims and time spent monitoring and attending to his various

6  accounts, these claims are simply not compensable.  And with respect to the alleged ransom attack

7  which prompted Hwynn to purchase a new computer, there are no facts alleged tethering that attack

8  to the Security Incident.  To the contrary, Hwynn admits that he fell victim to a phishing attack,

9  which, although unfortunate, he has not and cannot tether to the Security Incident at all.  Indeed,

10 unless Hwynn used a unique email that was provided only to MGM, something he does not allege, it

11 is not plausible to believe that this attack had any connection whatsoever to the Security Incident.

12 This is fatal to his claim.

13 <u>Andrew Sedaghatpour (California)</u>:  Sedaghatpour claims he "experienced an increase in

14 spam and phishing phone calls, text messages, and emails at the same phone number and email

15 address he used for his MGM stays."  Compl. ¶ 12.  Similarly, Sedaghatpour claims he "received

16 many alerts stating that login attempts were made on several of his accounts from electronic devices

17 that were not his." *Id.*  Likewise, Sedaghatpour claims he "subscribed to his H&R Block identity

18 monitoring service prior to the [Security Incident], and cannot risk cancelling the service now that

19 his information has been compromised in the [Security Incident]." *Id.*  Finally, Sedaghatpour claims

20 he "has spent time monitoring his financial and other accounts more closely than he otherwise would

21 have and resetting many of his passwords." *Id.*

22 An uptick in spam, emails or solicitation texts do not qualify as compensable injuries, any

23 more than time spent monitoring credit or other financial accounts does.  And putting aside the fact

24 these "injuries" are not compensable, Sedaghatpour has failed to allege facts linking these events to

25 the Security Incident, as opposed to the rest of his digital life.  Like the other Plaintiffs,

26 Sedaghatpour does not claim he exclusively used the allegedly impacted phone and email address for

27 his transaction with MGM, and does not allege any facts—much less plausible facts—tethering the

28 alleged harm to the Security Incident.  Simply asserting for each Plaintiff that "[c]riminals are

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED
CLASS ACTION COMPLAINT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

already using the information obtained in the Data Breach to target Plaintiff" is not enough.  Compl. ¶¶ 10-20.

Gennady Simkin (California):  Simkin claims that, "[o]n or around June 30, 2020, criminals *tried* to fraudulently charge approximately $70 on a credit card that he previously used for one or more of his MGM stays."  Compl. ¶ 13.  Similarly, Simkin claims that, "[o]n July 27, 2020 and July 28, 2020, criminals used his PII to impersonate him and fraudulently apply for telephone service accounts with T-Mobile and Sprint."  *Id.*  Simkin does not allege what PII was allegedly used for these applications, whether the applications were actually successful, or that there was any financial harm whatsoever resulting from these events.  Likewise, Simkin claims that, "[o]n August 16, 2020 and August 17, 2020, criminals gained access to his Amazon account and made fraudulent purchases for $14.14 and $21.76, which were later reversed by Amazon."  *Id.*  Simkin also claims he "experienced an increase in spam and phishing phone calls at the same phone number he used for his MGM stays."  *Id.*  According to Simkin, he allegedly "spent a significant amount of time in response to the [Security Incident] and its aftermath, including to respond to the fraudulent items, reset various passwords, and monitor his financial and other accounts more closely than he otherwise would have."  *Id.*

Simkin's claims fail for lack of compensable damages or facts tethering any of the claimed harms to the Security Breach.  First, with respect to the unauthorized charges, Simkin avoids pleading (probably because he cannot) that any of the charges were successful or unreimbursed.  Even more fundamentally, Simkin fails to allege how the data elements exposed in the Security Incident could be used to perpetrate any financial harm, much less to gain access to a completely unrelated Amazon account.

Robert Taylor (Connecticut):  Taylor claims that, "[o]n November 18, 2019, a credit card was fraudulently opened in his name."  Compl. ¶ 14.  Similarly, Taylor claims that, "[o]n February 23, 2021, a fraudulent $800.00 charge was incurred on his bank account, described without further detail as a charge from a 'Cash App.'"  *Id.*  Likewise, Taylor claims he "noticed several inquiries on his credit reports from unfamiliar entities."  *Id.*  Taylor also claims he "experienced an increase in spam and phishing phone calls and emails at the same phone number and email address he used for

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED
CLASS ACTION COMPLAINT

his MGM stays." *Id.*  According to Taylor, he "spent a significant amount of time in response to the [Security Incident] and its aftermath, including to investigate the fraudulent and suspicious items, reset various passwords, and monitor his financial and other accounts more closely than he otherwise would have." *Id.*  With respect to the unauthorized credit card account, Taylor pleads no facts plausibly demonstrating the application was related to the Security Incident or made relying on information disclosed as part of the Security Incident.  Nor does Taylor claim financial harm in the form of unreimbursed charges from the unauthorized account.  With respect to the bank charges from an unspecified "Cash App," Taylor alleges no facts linking this fraudulent transaction to the Security Incident—and the fact that the charge came later in time is not enough.

Michael Fossett (Georgia):  Fossett claims he "received multiple alerts from his CreditWise identity monitoring service stating that his email address has been found on the dark web." *Id.* Compl. ¶ 15.  Similarly, Fossett claims he "experienced an increase in spam and phishing phone calls and emails at the same phone number and email address he used for his MGM stays." *Id.* Likewise, Fossett claims he "spent a significant amount of time resetting passwords on many of his accounts." *Id.*  None of these claims are compensable, and the fact that his email address has been found on the dark web is an expected hazard of maintaining a digital life that simply underscores that Fossett has not and cannot link any of these alleged "injuries" to the Security Incident.

Victor Wukovits (Louisiana):  Wukovits claims he "experienced an increase in spam and phishing phone calls and emails at the same phone number and email address he used for his MGM stays." Compl. ¶ 16.  Wukovits also claims he "began paying for identity monitoring and related services through Parassure at a cost of $99 per month, and through IDAgent at a cost of $300 per month," before he even learned of the Security Incident. *Id.*  Wukovits claims he "cannot risk cancelling these services now that his information has been compromised by the [Security Incident], and he has therefore renewed these subscriptions after learning of the [Security Incident]." *Id.* According to Wukovits, he allegedly "has spent time monitoring his financial and other accounts more closely than he otherwise would have." *Id.*

Wukovits' enrollment in multiple security monitoring services *before* the Security Incident cannot support a claim of damages *resulting* from the Security Incident.  Nor can Wukovits offload

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

the cost of his voluntary decision to continue those services onto MGM in the absence of any showing that the monitoring is reasonable and necessary because of the Security Incident, as distinguished from some other motivating cause.

Kerri Shapiro (New York):  Shapiro claims she "experienced an increase in spam and phishing phone calls and emails at the same phone number and email address she used for her MGM stays."  Compl. ¶ 17.  Similarly, Shapiro claims that, "on February 28, 2021, she received a suspicious text message from AirBNB containing an unsolicited 'verification code' to access her account."  *Id.*  Likewise, Shapiro claims that, "[o]n March 22, 2021, she received an alert from Yahoo stating that a login attempt was made to her account from an unrecognized device."  *Id.* Shapiro also claims that, on "March 22, 2021, she experienced fraudulent charges of $41.62 and $39.88 on her DoorDash account" that were "reversed."  *Id.*  Shapiro further claims that, "[o]n March 27, 2021, she received an email from eBay stating that her account was locked 'due to concerns that someone may have used it without your permission.'"  *Id.*  According to Shapiro, she allegedly "spent time monitoring her financial and other accounts" and "obtaining and reviewing copies of her credit report."  *Id.* Like the other Plaintiffs, Shapiro has failed to plead any compensable harms (and reversed charges do not qualify), or that any of the malicious activity identified was actually the result of the Security Incident.  Her claims fail for both of these reasons.

Julie Mutsko (Ohio):  Mutsko claims she "experienced an increase in spam and phishing phone calls and emails at the same phone number and email address she used for her MGM stays." Compl. ¶ 18.  Similarly, Mutsko claims she "spent time monitoring her financial and other accounts more closely than she otherwise would have."  *Id.*  None of these claims are compensable, nor does Mutsko plead any facts to suggest that the uptick in spam or phishing phone calls was related to the Security Incident.

John Dvorak (Oregon):  Dvorak claims he "received an alert from his bank stating that someone attempted to access his 'Online Banking ID' on May 25, 2020."  Compl. ¶ 19.  Similarly, Dvorak claims "someone gained access to his account with an online merchant in May 2020 and changed the shipping name and address on the account."  *Id.*  Dvorak claims he "obtained a copy of his credit report from Equifax" as a result.  *Id.*  Likewise, Dvorak claims he "spent time resetting

several of his passwords," "placed credit freezes on his files with key credit reporting agencies," and "spent time monitoring his financial and other accounts more closely." *Id.* But like the other Plaintiffs, Mr. Dvorak alleges no facts—much less plausible ones—linking any of these account irregularities to the Security Incident. Nor is there any reason to think they are related—there is not, and cannot be, any allegation that his Online Banking ID was disclosed during the Security Incident (and he does not plead his bank account was actually accessed), nor was any merchant information contained in, or accessible from, the "phone book" elements at issue here. This is fatal to Dvorak's claims.

Larry Lawter (South Carolina): Lawter claims he "experienced an increase in spam and phishing phone calls and emails at the same phone number and email address he used for his MGM stay." Compl. ¶ 20. Similarly, Lawter claims he "subscribed to a credit monitoring service for $19.99 per month prior to the [Security Incident]," which he allegedly "renewed … after learning of the [Security Incident]." *Id.* Likewise, Lawter claims he "spent time monitoring his financial and other accounts more closely than he otherwise would have." *Id.* Lawter has alleged no facts tying the increased spam and phishing to the Security Incident, and nothing suggesting monitoring was either reasonable or necessary based on the Security Incident, or that his renewal was even related to the Security Incident.

Summary: Plaintiffs claim the following alleged "injuries" that are either (1) not compensable under controlling Ninth Circuit precedent (spam calls and emails, lost time); (2) out-of-pocket expenses that are entirely voluntary, decided upon *before* the Security Incident, and not compelled by the data elements disclosed (credit monitoring); or (3) identity theft/fraud that is not plausibly traceable to the Security Incident, that was reversed, or that otherwise did not result in actual financial harm. Moreover, Plaintiffs plead no facts, much less plausible facts, suggesting that any of those alleged "injuries" are attributable to the compromise of their "names, addresses, phone numbers, email addresses, and dates of birth." Compl. ¶ 2.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

| Plaintiff | Unreimbursed Identity Theft/Fraud | Spam Calls and Emails | Lost Time | Out-of-Pocket Expenditures |
|-----------|-----------------------------------|-----------------------|-----------|----------------------------|
| Bohlim | | √ | √ | |
| Hwynn | | √ | √ | √ |
| Sedaghatpour | | √ | √ | √ |
| Simkin | | √ | √ | |
| Taylor | √ | √ | √ | √ |
| Fossett | | √ | √ | |
| Wukovits | | √ | √ | √ |
| Shapiro | | √ | √ | |
| Mutsko | | √ | √ | |
| Dvorak | | | √ | √ |
| Lawter | | √ | √ | √ |

As explained below, none of these categories of "damages" are sufficient to state a cognizable claim, and Plaintiffs have failed entirely to allege facts plausibly linking the *only* potentially cognizable claim alleged (Taylor's unreimbursed cash app claim) to the Security Incident.  Absent plausibly pled facts linking Taylor's claim to the Security Incident—and none are pled—that claim fails too.

## III.    PLAINTIFFS' PLEADING BURDEN

To survive dismissal, Plaintiffs must allege facts that demonstrate a "plausible" basis for relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Indeed, the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]."  *Twombly*, 550 U.S. at 556.  "[A]

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1  plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels

2  and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at

3  555.  Plaintiffs must plead "factual content that allows the court to draw the reasonable inference

4  that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A claim is

5  "plausible" only when the factual allegations allow the court "to draw the reasonable inference that

6  the defendant is liable for the misconduct alleged." *Id.*  Factual allegations that establish no "more

7  than a sheer possibility" of liability are not sufficient.  *Id.*  Indeed, mere "conclusory allegations of

8  law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*,

9  355 F.3d 1179, 1183 (9th Cir. 2004).

10  "[P]lausibility pleading standards are especially important in cases like this one, where the

11  Defendant faces the 'potentially enormous expense of discovery' if the Court denies this motion to

12  dismiss." *Razuki*, 2018 WL 6018361, at *2 (quoting *Twombly*, 550 U.S. at 559).  Plaintiffs'

13  allegations fail under those precepts.

14  Additionally, for those claims that sound in fraud—Counts II, V-VII, IX-XIII—Plaintiffs

15  must do even more.  Plaintiffs must meet Rule 9(b)'s heightened pleading requirements, which

16  require them to "state with particularity the circumstances constituting fraud or mistake, including

17  the who, what, when, where, and how of the misconduct charged." *Torres v. Rothstein*, 2020 WL

18  2559384, at *3 (D. Nev. May 20, 2020) (quoting *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998

19  (9th Cir. 2010)).  Moreover, Plaintiffs "must set forth what is false or misleading about a statement,

20  and why it is false." *Id.*  Plaintiffs fail to do so here.

21  ## IV.   PLAINTIFFS FAIL TO STATE VIABLE CLAIMS FOR RELIEF AND THEIR

22  ## COMPLAINT SHOULD BE DISMISSED

23  ### A.   Applicable Law

24  None of the Plaintiffs are from Nevada, and all of them claim injuries that, although non-

25  cognizable for the reasons explained below, occurred in their home states.  Despite that, each of the

26  Plaintiffs allege common law claims—negligence, negligent misrepresentation, breach of implied

27  contract, and unjust enrichment—only under Nevada law.  Compl. ¶ 127 ("Nevada substantive law

28  controls the common law tort and contract-based claims of all Plaintiffs, regardless of Plaintiffs'

states of residency.").  MGM therefore addresses these claims as pled, and demonstrates that Nevada

law, which, again, is the sole basis for Plaintiffs' claims, provides Plaintiffs with no avenue for

relief.[3]

All Plaintiffs also allege statutory claims under Nevada's Consumer Fraud Act.  Compl. ¶

128.  Certain Plaintiffs also allege, "[i]n the alternative to the Nevada Consumer Fraud Act claim, …

claims for violation of their home states' unfair or deceptive trade practices statutes." *Id.* ¶ 129.[4]

But, as noted above, Plaintiffs do not, in the alternative or otherwise, allege common law claims

based on the laws of their home states.

Accordingly, this motion takes Plaintiffs at their word and addresses only the claims as pled

by them.  MGM therefore will show that, assuming Nevada law applies, Plaintiffs fail to state viable

claims for relief under their common law and Nevada Consumer Fraud Act theories.  MGM then

will show that Plaintiffs' alternative claims under the consumer protection statutes of their respective

---

[3] Plaintiffs' tactical decision is understandable because they clearly recognize that the need to apply the laws of multiple states with respect to their common law claims would preclude a finding of predominance and require the Court to deny class certification. *See, e.g., Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) ("Because the law of multiple jurisdictions applies here to any nationwide class of purchasers or lessees of Acuras including a CMBS system, variances in state law overwhelm common issues and preclude predominance for a single nationwide class."). Nevada's conflict-of-law rules determine which state's law governs the parties' (including absent class members') substantive rights.  *Cleary v. News Corp.*, 30 F.3d 1255, 1265 (9th Cir. 1994). Nevada applies the "most significant relationship test" of the Restatement (Second) of Conflict of Laws.  *Gen. Motors Corp. v. Eighth Judicial Dist. Court*, 134 P.3d 111, 116 (Nev. 2006).  The Restatement (Second) requires a multifactor test that, while different for contract and tort claims, turns on the individual circumstances of each putative class member and their respective dealings with MGM.  *See* Restatement (Second) of Conflict of Laws § 145 (relevant factors in tort cases include "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered"); Restatement (Second) of Conflict of Laws § 188 (relevant factors in contract cases include "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties").

[4] Plaintiffs Wukovits and Lawter do not assert alternative statutory claims under the laws of their home states of Louisiana and South Carolina, respectively.  Accordingly, MGM will not address the laws of those states.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED
CLASS ACTION COMPLAINT

1  home states also fail.  To the extent Plaintiffs abandon the Nevada-law claims they have actually

2  brought and seek to bring claims under different laws, MGM will address them at that juncture.[5]

3  **B.**     **Plaintiffs Fail To Allege The Requisite Injuries And Damages With Respect To**

4             **Their Claims**

5          The Ninth Circuit just affirmed the dismissal of a data breach class action based on the

6  plaintiff's "fail[ure] to adequately allege damages stemming from a data breach of [defendant] by

7  third parties," and the Court should do so here.  *Pruchnicki*, 845 F. App'x at 614.  Indeed,

8  *Pruchnicki* confirms the trend amongst courts in this Circuit to dismiss no-injury data breach class

9  actions similar to this one.  *See*, *e.g.*, *Gardiner*, No. 20-cv-04618-JSW, at 10:27-11:1 (dismissing

10  data breach class action because "Plaintiff's vague and conclusory allegations regarding his

11  purported injuries are insufficient to establish the damages element required for his … claims.");

12  *Holly*, 2020 WL 6161457, at *5  ("finding plaintiff's "conclusory and vague allegations insufficient

13  to establish that she suffered actual damages as a result of the data breach"); *Razuki*, 2018 WL

14  6018361, at *1 (plaintiff's allegations "too conclusory and vague to satisfy the pleading standard in a

15  complex, large-scale, data-breach class action"); *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 916 (N.D.

16  Cal. 2009) (granting summary judgment for failure to show cognizable harm despite "fear of future

17  identity theft"), aff'd, 380 F. App'x 689, 693 (9th Cir. 2010).

18          As in *Pruchnicki*, which also involved Nevada law, each of Plaintiffs' claims requires

19  appreciable, non-speculative injury or damages caused by the defendant's conduct.  *Pruchnicki*, 439

20  F. Supp. at 1231, aff'd, 845 F. App'x at 614 ("negligence, breach of implied contract, negligent

21  misrepresentation, and NRS 41.600 claims"); Cal. Bus. & Prof. Code § 17204 (California UCL);

22  *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 977 (N.D. Cal. 2016) (California CLRA); *In re Sony*

23  *Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 1010 (S.D. Cal. 2014)

24  (California CRA); *Jones v. Midland Funding, LLC*, 755 F. Supp. 2d 393, 398 (D. Conn. 2010)

25  (Connecticut UTPA); Conn. Gen. Stat. §§ 42-110b(a); *Parker v. Shaker Real Estate, Inc.*, 705 A.2d

26

27

28  ─────────
[5] While the laws of the various states differ, MGM believes the legal principles outlined herein,
especially concerning injury and damages, the economic loss doctrine, and the formation of implied
contracts, would likely require dismissal under most if not all potentially relevant states' laws.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED
CLASS ACTION COMPLAINT

210, 214 (Conn. 1998) ("The ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief.") (quotations omitted); *Accord Pats., LLC v. Indus. Revolution, Inc.*, 2010 WL 11508006, at *2 (N.D. Ga. Dec. 9, 2010) (Georgia DTPA); *Williams v. Bayview Loan Serv., LLC*, 2016 WL 8711209, at *10 (E.D.N.Y. Jan. 22, 2016) (NY Section 349 Claim); *Adams v. Antonelli Coll.*, 304 F. Supp. 3d 656, 661 (S.D. Ohio 2018) (Ohio DTPA); *Reed v. Dynamic Pet Prods.*, 2016 WL 3996715, at *8 (S.D. Cal. July 21, 2016) (Oregon UTPA).  Plaintiffs claim the following forms of harm, none of which is cognizable:

    <u>Lost PII value</u>:  Plaintiffs claim they "los[t] the inherent value of their PII."  Compl. ¶ 118(a). "In order to survive a motion to dismiss on this theory of damages, a plaintiff 'must establish both the existence of a market for her personal information and an impairment of her ability to participate in that market.'"  *Pruchnicki*, 439 F. Supp. 3d at 1234 (quoting *Svenson v. Google Inc.*, 2016 WL 8943301, at *9 (N.D. Cal. Dec. 21, 2016)); *see also In re Google, Inc. Privacy Policy Litig.*, 2015 WL 4317479 at *5 (N.D. Cal. July 15, 2015) ("Plaintiffs plead neither the existence of a market for their email addresses and names nor any impairment of their ability to participate in that market.").  Plaintiffs plead neither.

    "[T]here are no specific allegations that [P]laintiff[s] ha[ve] been unable to sell, profit from, or otherwise monetize [their] personal information."  *Pruchnicki*, 439 F. Supp. 3d at 1235; Compl. ¶¶ 100-09.  Similarly, "there are no specific allegations suggesting how the value of [their] personal information has been reduced."  *Id.*  Likewise, Plaintiffs do "not allege that [they] tried to sell [their] information and w[ere] prevented from doing so."  *Id.*  Finally, Plaintiffs do "not allege that there was a reduction in the value of [their] personal information."  *Id.*

    <u>Benefit of the bargain damages</u>:  Plaintiffs claim they suffered harm by virtue of "purchasing hotel room rentals that they would not have otherwise paid for, and/or paying more for the rooms than they otherwise would have paid, had they known the truth about MGM's substandard data security practices."  Compl. ¶ 118(b).  Plaintiffs similarly claim they "los[t] the value of MGM's implied promises of adequate data security."  *Id.* ¶ 118(c).  As a threshold matter, Plaintiffs have failed to adequately allege inadequate security, much less an implied promise to different or

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED
CLASS ACTION COMPLAINT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1    enhanced security; second, Plaintiffs got exactly what they bargained for—a hotel room at the hotel

2    of their choosing—and they have not alleged otherwise.

3        Regardless, courts in this Circuit have squarely rejected Plaintiffs' benefit of the bargain

4    theory.  Such a theory is "cognizable only where a consumer purchases defective or falsely

5    advertised products, or—in the data breach context—in the presence of a security agreement

6    concerning consumer data or some other representation that the cost of security is subsumed within

7    the cost of goods."  *Ables v. Brooks Bros. Grp.*, 2018 WL 8806667, at *7 (C.D. Cal. June 7, 2018).

8    Plaintiffs "ha[ve] not alleged that [MGM] represented … that the cost of data security was included

9    in the cost of" hotel rooms in any agreement or otherwise.  *Gardiner*, No. 20-cv-04618-JSW, at

10    10:7-9.  The theory is not viable.

11        <u>Identity theft and fraud</u>:  Plaintiffs Simkin, Taylor, Shapiro, and Dvorak claim to have

12    suffered "identity theft and fraud resulting from the theft of their PII," including:

13    - "[U]nauthorized charges and loss of use of and access to their financial account."

14    - "[F]unds, and costs associated with the inability to obtain money from their accounts,

15        including missed payments, late charges, and other fees."

16    Compl. ¶ 118(d) & (g).

17        Simkin and Shapiro acknowledge that the allegedly fraudulent charges were reversed or

18    reimbursed, and Dvorak claims no fraudulent charges whatsoever.  Thus, they suffered no damages.

19    *Ruiz v. Gap, Inc.*, 2009 WL 250481, at *3 (N.D. Cal. Feb. 3, 2009) (finding the plaintiff could not

20    establish standing where defendant had offered to pay or reimburse charges for credit reporting and

21    fraud assistance), aff'd, 380 F. App'x 689 (9th Cir. 2010).  And none of the Plaintiffs allege how the

22    fraud of which they complain could possibly, must less plausibly, be accomplished using only their

23    "names, addresses, phone numbers, email addresses, and dates of birth."  Compl. ¶ 2.  They do not

24    allege that MGM had any information about any of their financial accounts, or even generic

25    passwords that these Plaintiffs may have reused.  Accordingly, as numerous courts have held, their

26    allegations of fraud caused by the Security Incident are implausible and must be dismissed.  *Jackson*,

27    2019 WL 6721637, at *4 ("Here, Plaintiff has once again failed to demonstrate that her name, phone

28    number, email address (but not her email password), and mailing address are sensitive enough pieces

of information to give rise to a certainly impending risk of future identity theft or fraud."); *Ables*, 2018 WL 8806667, at *5 ("Assuming, without deciding, that a third party intends to commit identity theft using Ables' compromised PII, Ables still has not made allegations that give rise to the reasonable inference that the stolen PII is sufficient to actually commit identity theft."); *Stasi v. Inmediata Health Grp. Corp.*, 2020 WL 2126317, at *5 (S.D. Cal. May 5, 2020) ("Even if Plaintiffs had alleged their individual names, addresses, dates of birth, gender, and medical claims information were exposed, Plaintiffs do not allege, and cite no caselaw supporting, this information is of the type needed to open accounts or spend money in the plaintiffs' names.") (emphasis added).

<u>Expenditures on alleged prophylactic measures</u>:  Plaintiffs claim to have expended:

- "[C]osts associated with the detection and prevention of identity theft and unauthorized use of their financial and other accounts."

- "[C]osts associated with purchasing credit monitoring and identity protection services." Compl. ¶ 118(e) & (f).  Plaintiffs, however, "offer[] no factual allegations in support of the alleged credit monitoring services, nor do[] [they] sufficiently allege that such services were reasonable and necessary."  *Gardiner*, No. 20-cv-04618-JSW, at 9:16-17; *see also Holly*, 2020 WL 1853308, at *6 (plaintiff's "conclusory allegations concerning any mitigation or remediation efforts fail because she has not provided any supporting factual allegations or alleged how any credit monitoring was reasonable and necessary").

Plaintiffs cannot show expenditures on credit monitoring or other prophylactic measures are reasonable, much less necessary.  Nor can Plaintiffs plausibly demonstrate that a decision to enroll in credit monitoring *prior* to the Security Incident could be necessitated by that Incident.  As shown above, Plaintiffs face no risk of "identity theft and unauthorized use of their financial and other accounts" based on the alleged compromise of their "names, addresses, phone numbers, email addresses, and dates of birth."  Compl. ¶¶ 2 & 118(e); *Jackson*, 2019 WL 6721637, at *4.[6]  To the extent Plaintiffs spent money on alleged prophylactic measures, such "injuries" are manufactured

---

[6] The same is true with respect to those Plaintiffs who claim to have provided MGM their driver's licenses.  *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 2019 WL 6522843, at *4 (C.D. Cal. Aug. 19, 2019) (citing *Antman v. Uber Techs., Inc.*, 2015 WL 6123054, at *10-11 (N.D. Cal. Oct. 19, 2015)).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

and non-compensable. *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1216-17 (N.D. Cal. 2014); *see also Ables*, 2018 WL 8806667, at *7 ("In the absence of increased risk of future harm, neither time nor money expended by Ables to mitigate a hypothetical risk confers standing."); *Beck v. McDonald*, 848 F.3d 262, 276 (4th Cir. 2017) (plaintiffs' allegations "that they wish to enroll in, are enrolled in, or have purchased credit monitoring services … do not constitute an injury in fact").

<u>Lost time</u>:  Plaintiffs claim they spent "time to address and attempt to mitigate the actual and future consequences of the [Security Incident]."  Compl. ¶ 118(h).  Lost time alone, however, "is not a cognizable injury sufficient to support the element of damages." *Pruchnicki*, 439 F. Supp. 3d at 1233.

<u>Spam emails and phone calls</u>:  Nearly all Plaintiffs claim to have "experienced an increase in spam and phishing phone calls and emails." *See, e.g.*, Compl. ¶ 10.  But the plaintiff in *Pruchnicki* similarly claimed damages in the form of an "increased number of 'spam' calls," which the Ninth Circuit held was insufficient. *Pruchnicki*, 845 F. App'x. at 614.  And for good reason.  Those allegations simply do "not constitute an injury." *Jackson*, 2019 WL 6721637, at *4 (citing *Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 857 (S.D. Tex. 2015) (no injury despite plaintiff receiving "target[ed]" physical, electronic, and telephonic "solicitations"); *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) ("The receipt of spam by itself, however, does not constitute a sufficient injury entitling [plaintiff] to compensable relief.")).

<u>Allegedly imminent risk of future harm</u>:  Plaintiffs claim a "continued imminent and certainly impending injury flowing from potential fraud and identify theft posed by their PII being in the possession of unauthorized third parties."  Compl. ¶ 118(i).  That claim, however, fails as a matter of law and fact.

"Alleged injuries that stem from the danger of future harm are insufficient to support" the prima facie damages elements of their claims. *Pruchnicki*, 439 F. Supp. 3d at 1232.  Moreover, courts have routinely dismissed claims based on the alleged risk of future harm in light of the data elements at issue. *Jackson*, 2019 WL 6721637, at *4 (contact information:  "Here, Plaintiff has once again failed to demonstrate that her name, phone number, email address (but not her email

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

password), and mailing address are sensitive enough pieces of information to give rise to a certainly impending risk of future identity theft or fraud."); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 2019 WL 6522843, at *4 (C.D. Cal. Aug. 19, 2019) (contact information plus driver's license numbers:  "Plaintiff fails to explain how gaining access to one's basic contact information and driver's license number creates a credible threat of fraud or identity theft."); *Antman v. Uber Techs., Inc.*, 2015 WL 6123054, at *10-11 (N.D. Cal. Oct. 19, 2015) (theft of names and driver's licenses, without more, is insufficient to establish a credible threat of immediate harm).

<u>Driver's licenses</u>:  Plaintiffs Bohlim, Hwynn, Sedaghatpour, Simkin and Dvorak claim they "presented" their driver's license to MGM.  Compl. ¶¶ 263, 337.  This does not change any of the above analysis.  It is typical upon check-in for hotel clerks to view drivers' licenses to verify identity, and that is all Plaintiffs allege.  Plaintiffs make no allegation that MGM recorded their driver's license number or that their license information was included in the compromised information (in which case these individuals would have been notified of this fact).  And even if they did make such allegations, that still does not explain how the fraud of which they complain could have been committed using only their "basic contact information and driver's license number."  *In re Uber*, 2019 WL 6522843, at *4 (citing *Antman*, 2015 WL 6123054, at *10-11).

Plaintiffs fail to allege cognizable damages and/or any injuries plausibly caused by the Security Incident.  All of their claims should be dismissed on this ground alone.

## C.  <u>Plaintiffs' Negligence Claim Fails</u>

"[T]o prevail on a negligence claim, a plaintiff must establish four elements:  (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages."  *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 824 (2009).  Plaintiffs fail to do so.

*First*, Plaintiffs' negligence claim cannot survive the economic loss rule, which bars recovery in tort absent personal injury or property damage.  *Nev. Power Co. v. Trench France, S.A.S.*, 2020 WL 6689340, at *4 (D. Nev. Nov. 12, 2020) ("The economic-loss doctrine is the judicially created rule that cabins the ability to recover purely monetary damages to contract-based theories, barring recovery in tort.");  *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 125 Nev. 66, 73 (2009) (economic loss rule "bars unintentional tort actions when the plaintiff seeks to recover 'purely

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   economic losses'"); *Bustos v. Dennis*, 2020 WL 5763603, at *4 (D. Nev. Sept. 28, 2020) ("Here,

2   Bustos alleges that he lost commissions and service fees that he speculates would have been earned

3   by his distribution network of agents.  This is exactly the type of damages alleged by the plaintiff in

4   *Desert Salon* which the court found to be 'purely economic losses' barred by the economic loss

5   doctrine."); *Lopez v. One Reverse Mortg., LLC*, 464 P.3d 128 (Nev. App. 2020) ("Here, Lopez

6   asserts that his damages stem from not being able to access his $20,000 in home equity through the

7   reverse mortgage.  He asserts no physical injury or damage to his property.  Thus, his alleged

8   damages are economic only and his negligence claim must be dismissed.").  Plaintiffs allege no

9   personal injury or property damage.  Accordingly, the economic loss rule bars their claim.

10          *Second*, Plaintiffs fail to allege the breach of any legal duty.  Plaintiffs claim "MGM

11  inadequately safeguarded consumers' PII in deviation of standard industry rules, regulations, and

12  best practices at the time of the [Security Incident]."  Compl. ¶ 157.  But Plaintiffs' "vague

13  allegations do not establish how [MGM] failed to take reasonable measures to protect customer's

14  data."  *Gardiner*, No. 20-cv-04618-JSW, at 10:6-7.  Plaintiffs "need[] to hum a few more bars

15  about" why MGM's security measures were inadequate, beyond the mere fact that a breach

16  occurred.  *Razuki v. Caliber Home Loans, Inc.*, 2018 WL 2761818, at *3 (S.D. Cal. June 8, 2018)

17  (dismissing claim alleging inadequate data security measures).  As the *Razuki* court held when it

18  dismissed the complaint with prejudice:

19              The Court has already acknowledged that it may be difficult to
20              definitively show Caliber's practices were insufficient prior to
                discovery, but again, he needs something more than what he's pleading
21              now.  What facts lead him to believe Caliber didn't comply with
                industry standards?  What are other companies doing that Caliber isn't?
22              These are basic questions that Razuki could plead to plausibly show
                Caliber's conduct was unlawful.  Instead, it appears he's simply recited
23              a few buzz words with the hope that he may be able to figure out later
                what, if anything, Caliber has done wrong.  But the Supreme Court tells
24              us that's not enough.  This is a large-scale class action involving more
25              than 100,000 potential plaintiffs.

26  *Razuki*, 2018 WL 6018361, at *2.

27          *Third*, as explained above, Plaintiffs fail to plead cognizable harm, a requisite element of any

28  negligence claim.  *Pruchnicki*, 439 F. Supp. 3d at 1231.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

### D. Plaintiffs' Negligent Misrepresentation Claim Fails

Like Plaintiffs' negligence claim, Nevada law bars Plaintiffs' negligent misrepresentation claim. As explained in *Nevada Power*, 2020 WL 6689340, Nevada law provides a limited exception to the economic loss rule for certain negligent misrepresentation claims. However, that limitation only applies to "cases in which a special relationship or extra-contractual duty existed between the parties, like that between an accountant or attorney and her clients." *Id.* at *6 (citing *Terracon*, 125 Nev. at 75).

Recognizing the need to demonstrate a "special relationship" under Nevada law, Plaintiffs allege that "MGM was in an exclusive position to ensure that its safeguards were sufficient to protect against the foreseeable risk that a data breach could occur" and "in exclusive possession of the knowledge that its data security processes and procedures were inadequate to safeguard consumers' PII." Compl. ¶ 170. But Nevada law does not recognize a "special relationship" under those circumstances (as opposed to the type of fiduciary relationships that exist between "an accountant or attorney and her clients"). *Nevada Power*, 2020 WL 6689340, at *6. Indeed, were the arm's length, non-fiduciary relationship between a hotel and a guest to qualify for the special relationship exception, it is hard to see what would not qualify. The exception would swallow the rule, contrary to the Nevada Supreme Court's creation of a *narrow* exception. The economic loss rule thus bars Plaintiff's negligent misrepresentation claim.

*Second*, the "tort of negligent misrepresentation requires an affirmative false statement; a mere omission will not do." *Landow v. Bartlett*, 2019 WL 8064074, at *3 n.26; *see also id.* ("In Nevada, negligent misrepresentation and fraudulent misrepresentation both require proof that (1) the defendant *supplied false information or make a false representation* …") (emphasis added). Here, Plaintiffs do not even try to plead a false statement—much less one they relied on.[7] *Id.* at *3 (plaintiff must "suffer[] damage resulting from his reliance" on false representation).

---

[7] Plaintiffs implicitly acknowledge that they are not claiming any affirmative misrepresentation. Instead, they claim "Nevada has adopted the Restatement (Second) of Torts § 551 (1977), which imposes liability for negligent misrepresentations based on omissions." Compl. ¶ 163. Judge Dorsey, however, considered this very question and held that "alleged omissions can be pursued only under the theory of fraudulent misrepresentation" and not under a negligent misrepresentation theory. *Landow*, 2019 WL 8064074, at *3 n.26.

21

2:20-CV-00376-GMN-NJK

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1      *Third*, as explained below in connection with Plaintiffs' statutory claims, Plaintiffs fail to

2   plead any fraudulent conduct with particularity.  *Landow*, 2019 WL 8064074, at *3 (negligent

3   misrepresentation claims must be pled with particularity).  Nor do they plead cognizable damages.

4   *Pruchnicki*, 439 F. Supp. 3d at 1233 (damages required).

5          **E.    Plaintiffs' Implied Contract Claim Fails**

6          To state a claim for breach of an implied contract, Plaintiffs must show:  "(1) the existence of

7   a valid contract; (2) a breach by the defendant; and (3) damage as a result of the breach."  *Mizrahi v.*

8   *Wells Fargo Home Mortg.*, 2010 WL 2521742, at *3 (D. Nev. June 16, 2010).  Plaintiffs have not

9   and cannot do so.

10         *First*, Plaintiffs do not and cannot plead the nature and scope of any implied contract, as they

11  must.  Plaintiffs claim they "entered into implied contracts with MGM under which MGM agreed to

12  adopt reasonable safeguards to protect their PII."  Compl. ¶ 181.  Not so.  Numerous courts have

13  rejected implied contract theories in the data breach context where, as here, Plaintiffs do "not allege

14  that [MGM] affirmatively promised that its customer data would not be hacked."  *Kuhns v.*

15  *Scottrade, Inc.*, 868 F.3d 711, 717 (8th Cir. 2017).  Here, the "only allegations alleged to give rise to

16  any contract are that customers agreed to pay money for" hotel rooms.  *In re Zappos.com, Inc.*, 2013

17  WL 4830497, at *3 (D. Nev. Sept. 9, 2013).  And MGM provided such rooms to Plaintiffs.  *Thomas*

18  *v. Kimpton Hotel & Rest. Grp., LLC*, 2020 WL 3544984, at *4 (N.D. Cal. June 30, 2020) ("Here,

19  plaintiffs do not allege facts to support a finding that the hotel rooms for which they paid were in any

20  manner inadequate, that some portion of the room charges were attributable to data security, or that

21  some other basis exists upon which to support a finding that they did not receive the value paid for

22  the hotel rooms."); *see also Antman v. Uber Techs., Inc.*, 2018 WL 2151231, at *12 (N.D. Cal. May

23  10, 2018) ("[P]laintiffs have not plausibly pleaded a claim for breach of an implied contract.  They

24  allege only this:  'Furthermore, Plaintiffs and other Class members were injured because they did not

25  receive the benefit of the bargain entailed in the implied contracts between Plaintiffs and Defendant

26  concerning security of their Private Information.'  They plead no facts about the existence of an

27  implied contract, such as mutual assent and the other elements necessary to establish an express

28

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   contract."). Plaintiffs' implied contract claim therefore fails for the simple reason that they have not

2   pled an implied contract as to data security.

3          *Second*, even if they had sufficiently plead an implied contract, Plaintiffs fail to allege any

4   breach. Plaintiffs do not allege that the implied contract required perfect data security such that no

5   breach could ever occur. Rather, Plaintiffs claim "MGM breached its implied contracts with

6   Plaintiffs and Class members by failing to implement reasonable data security measures." Compl. ¶

7   188. But Plaintiffs do not allege how MGM violated this alleged promise other than the fact of the

8   Security Incident. As courts have recognized, the claim that MGM "fail[ed] to implement

9   reasonable data security measures" "does not assert more than the mere possibility of misconduct."

10  *Id.*; *Kuhns*, 868 F.3d at 717. Indeed, the "implied premise that because data was hacked [MGM]'s

11  protections must have been inadequate is a naked assertion[] devoid of further factual enhancement

12  that cannot survive a motion to dismiss." *Id.* (citations omitted). Beyond that "naked assertion,"

13  Plaintiffs' "vague allegations do not establish how [MGM] failed to take reasonable measures to

14  protect customer's data." *Gardiner*, No. 20-cv-04618-JSW, at 10:6-7; *see also Razuki*, 2018 WL

15  2761818, at *3.

16         *Third*, as stated above, Plaintiffs fail to show cognizable damages, which they must.

17  *Pruchnicki*, 845 F. App'x. at 614 (dismissing implied contract claim in data breach context for lack

18  of damages). Plaintiffs' breach of implied contract claim fails for three independent reasons.

19         **F.       Plaintiffs' Unjust Enrichment Claim Fails**

20         To state an unjust enrichment claim, Plaintiffs must show: "(1) a benefit conferred on the

21  defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and

22  retention of the benefit by the defendant (4) in circumstances where it would be inequitable to retain

23  the benefit without payment." *Ames v. Caesars Ent. Corp.*, 2019 WL 1441613, at *5 (D. Nev. Apr.

24  1, 2019). Plaintiffs cannot make that showing here.

25         *First*, the claim is barred by virtue of Plaintiffs' inability to plead a lack of legal remedies.

26  Just last year, the Ninth Circuit held that, under federal law, plaintiffs cannot pursue equitable

27

28

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED
CLASS ACTION COMPLAINT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   remedies unless they can show they lack an adequate remedy at law.[8]  *Sonner*, 971 F.3d at 845

2   ("[W]hen a plain, adequate, and complete remedy exists at law, we hold that federal courts rely on

3   federal equitable principles before allowing equitable restitution in such circumstances.").  Unjust

4   enrichment is equitable in nature.  *H&H Pharm., LLC v. Chattem Chemicals, Inc.*, 2020 WL 376648,

5   at *15 (D. Nev. Jan. 23, 2020).  So too is the remedy of disgorgement, which Plaintiffs expressly

6   seek.  Compl. ¶ 205; *see also JL Beverage Co., LLC v. Beam Inc.*, 2017 WL 5158661, at *2 (D. Nev.

7   Nov. 7, 2017) ("disgorgement is an equitable remedy").  Because Plaintiffs have not and cannot

8   show they lack legal remedies, their unjust enrichment claims are barred by *Sonner*.  *Sharma v.*

9   *Volkswagen AG*, 2021 WL 912271, at *9 (N.D. Cal. Mar. 9, 2021) ("Because they have not shown

10  that legal remedies are unavailable or inadequate as to either past or future injury, Plaintiffs' CLRA,

11  UCL, and *unjust enrichment* claims must be dismissed.) (emphasis added).

12       *Second*, Plaintiffs fail to plead facts sufficient to state an unjust enrichment claim.  Nor could

13  they.  Plaintiffs did not "bestow[] any gratuitous benefit upon" MGM.  *In re Zappos*, 2013 WL

14  4830497, at *5 (applying Nevada law).  An unjust enrichment claim "means more than that the

15  defendant has profited unscrupulously while the plaintiff has been harmed."  *Id.*  Rather, the claim

16  "only lies against a defendant who has willingly received the plaintiff's labor or goods without

17  giving anything of equal value in return under circumstances where it would be inequitable not to

18  require payment or 'restitution' therefor."  *Id.*  Plaintiffs allege no such facts here.  "Although

19  Plaintiffs allege having bestowed the benefit of their purchase of [hotel rooms], it appears

20  undisputed that [MGM] provided Plaintiffs a benefit in return (providing the [rooms]) such that there

21  is no unrecompensed benefit conferred."  *Id.*  Plaintiffs' unjust enrichment claim fails for that

22  additional, independent reason.

23       **G.    Plaintiffs' Statutory Claims Are Deficient**

24       As demonstrated above, all of Plaintiffs' statutory claims fail because Plaintiffs have not

25  alleged cognizable injury caused by the Security Incident.  However, they also fail for additional

26  reasons.  *First*, MGM demonstrates that, regardless of the statute under which Plaintiffs are

27

28  ----
    [8] As the Ninth Circuit held, "traditional principles governing equitable remedies in federal courts"
    control this issue, irrespective of any state laws to the contrary.  *Sonner*, 971 F.3d at 844.

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED
CLASS ACTION COMPLAINT

1    proceeding, they have failed to plead their claims with sufficient particularity under Rule 9(b).

2    *Second*, MGM addresses other issues specific to each state's law that require dismissal.

3         As to Plaintiffs' failure to plead fraud their statutory claims with particularity, Plaintiffs

4    assert that MGM violated the Nevada Consumer Fraud Act and, in the alternative, similar statutes in

5    six other states.  These claims are based on allegations of "consumer fraud."  *See*, *e.g.*, Compl. ¶ 207.

6    Accordingly, Plaintiffs must plead these claims with particularity.  *Davenport v. Homecomings Fin.,*

7    *LLC,* 2014 WL 1318964, at *3 (D. Nev. Mar. 31, 2014) (Nevada Consumer Fraud Act); *Kearns v.*

8    *Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009) (California UCL and CLRA); *In re*

9    *Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 120 (D. Conn. 2014) (Connecticut UTPA:  "The Court

10   holds that to the extent the Plaintiffs have alleged a CUTPA action based on fraud, they have failed

11   to sufficiently plead with the particularity required in Rule 9(b) …"); *HLD Enters v. Michelin N.*

12   *Am., Inc.*, 2004 WL 2095739, at *5 (N.D. Ga. June 29, 2004) (Georgia UDTPA); *In re NJOY, Inc.*

13   *Consumer Class Action Litig.*, 2014 WL 12586074, at *14 (C.D. Cal. Oct. 20, 2014) (New York

14   Section 349:  "Consequently, the court analyzes plaintiffs' Florida and New York [Section 349]

15   claims under Rule 9(b)."); *Dawson v. Blockbuster, Inc.,* 2006 WL 1061769, at *3 (Ohio Ct. App. 8th

16   Dist. Mar. 16, 2006) (Ohio DTPA); *Mack v. LLR, Inc*., 2018 WL 6927860, at *12 (C.D. Cal. Aug.

17   15, 2018) (Oregon UTPA).[9]  Plaintiffs have not done so.

18        In vague and conclusory fashion, Plaintiffs claim MGM "failed to disclose the material fact

19   that its data security practices were inadequate to reasonably safeguard consumers' PII."  *See*, *e.g.*,

20   Compl. ¶ 208.  But those are "conclusory allegations of wrongdoing that are too vague to state a

21   valid claim for fraud under the heightened pleading standards."  *Mauer v. Am. Home Mortg.*

22   *Acceptance, Inc.*, 2011 WL 6752631, at *4 (D. Nev. Dec. 23, 2011).  "[T]o plead the circumstances

23   of omission with specificity, [a] plaintiff must describe the content of the omission and where the

24   omitted information should or could have been revealed, as well as provide representative samples

25   of advertisements, offers, or other representations that plaintiff relied on to make her purchase and

26   that failed to include the allegedly omitted information."  *Stewart v. Electrolux Home Prod., Inc.*,

27

28   [9] As stated above, Plaintiffs also must plead their negligent misrepresentation claims with
     particularity.  *Landow*, 2019 WL 8064074, at *3.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

304 F. Supp. 3d 894, 907 (E.D. Cal. 2018) (quoting *Eisen v. Porsche Cars N.A., Inc.*, 2012 WL 841019, at * 3 (C.D. Cal. Feb. 22, 2012)).  Plaintiffs do not plead any of those facts.

To be sure, Plaintiffs do not:  (1) describe any "data security practices;" (2) allege any promises made by MGM regarding those "data security practices;" (3) explain how MGM failed to employ those "data security practices;" (4) allege facts showing MGM knew it failed to employ such "data security practices;" (5) identify the precise disclosures MGM should have made regarding any "data security practices;" or (6) allege how such disclosures should have been presented to Plaintiffs. "[A]s the complaint is pled, it is difficult to know the specific nature of what [data security shortcomings] [MGM] allegedly concealed from Plaintiffs." *Id*.

In the end, Plaintiffs fraud theory boils down to this:  the Security Incident happened; therefore, MGM necessarily failed to employ adequate security measures, MGM knew it did not employ adequate security measures, and MGM intentionally withheld that information from customers.  That is not particularized pleading.  It is a string of vague and unsupported speculation.

### H.    Plaintiffs' Statutory Claims Otherwise Fail

#### 1.    The Nevada Consumer Fraud Act Claim Fails

To state a claim under the Nevada Consumer Fraud Act, Plaintiffs must show: "(1) an act of consumer fraud by the defendant (2) caused (3) damages to the plaintiff." *Alexander v. Falk*, 2019 WL 3717802, at *5 (D. Nev. Aug. 7, 2019) (quotations omitted).  Plaintiffs cannot do so.

As an initial matter, Plaintiffs predicate their consumer fraud claim in part on an omissions theory.  To do so, however, Plaintiffs must show MGM had an affirmative duty to disclose the allegedly omitted information. *Taddeo v. Taddeo*, 2011 WL 4074433, at *6 n.3 (D. Nev. Sept. 13, 2011).  "For a mere omission to constitute actionable fraud" in Nevada, Plaintiffs "must first demonstrate that [MGM] had a duty to disclose the fact at issue." *Soffer v. Five Mile Cap. Partners, LLC*, 2013 WL 638832, at *10 (D. Nev. Feb. 19, 2013).  Plaintiffs, however, plead no facts establishing any duty to disclose on the part of MGM, such as a "fiduciary relationship." *Id.*  Nor could they.  Indeed, Plaintiffs "have cited no Nevada case law … that recognizes a fiduciary relationship between" a hotel and its guests. *Id.*; *see also In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1337 (N.D. Ga. 2019) (dismissing Nevada Consumer Fraud Act

1   claim predicated on omissions theory: "In the absence of a confidential relationship, no duty to

2   disclose exists when parties are engaged in arm's-length business negotiations; in fact, an arm's-

3   length relationship by its nature excludes a confidential relationship.").[10]

4          In addition, Plaintiffs' claims based on the violation of other statutes cannot form the basis of

5   a Nevada Consumer Fraud Act claim.  Plaintiffs first claim MGM violated Nev. Rev. Stat. §

6   603A.210(1).  Compl. ¶ 210.  But that statute applies only to Nevada residents, and none of the

7   Plaintiffs resides in Nevada.  *Id.* (limited to "personal information of a *resident of this State*)

8   (emphasis added).  Similarly, the statute does not apply to the information at issue here—*i.e.*,

9   "names, addresses, phone numbers, email addresses, and dates of birth."[11]

10         Plaintiffs next claim that "MGM violated the state statutes set forth in Counts VI-XIV" of

11  their Complaint.  Compl. ¶ 211.  But for the reasons set forth elsewhere herein, Plaintiffs have not

12  and cannot allege a violation of those statutes.

13         Plaintiffs finally claim "MGM violated the FTC Act."  Compl. ¶ 212.  Plaintiffs' vague and

14  conclusory references to the FTC Act fall short of the mark.  Plaintiffs must "plead with particularity

15  how the facts of this case pertain to that specific statute."  *Baba v. Hewlett-Packard Co.*, 2010 WL

16  2486353, at *6 (N.D. Cal. June 16, 2010).  Plaintiffs have not done so.

17         Plaintiffs fail entirely to plead particularized facts concerning how "MGM knew or should

18  have known that its data security practices were deficient," how it "violated the FTC Act," or how it

19  "failed to adhere to the FTC's data security guidance."  Compl. ¶ 212.  For example, Plaintiffs claim

20  that MGM failed to adhere to the FTC's data security guidance.  But they do not say what guidance,

21

22  [10] The *Equifax* court found Nevada was one of the "seventeen" states whose consumer fraud statutes
    "do not impose liability for omissions unless there was a duty to disclose."  *In re Equifax*, 362 F.
23  Supp. 3d 1295 at 1337; *see In re Equifax, Inc., Customer Data Sec. Breach Litig.*, Case No. 1:17-
    md-02800-TWT (ECF No. 425-3) (identifying Nevada as one of seventeen states whose consumer
24  fraud statutes impose a duty of disclosure requirement).

25  [11] "Personal information" defined as: "(a) Social security number.  (b) Driver's license number,
    driver authorization card number or identification card number.  (c) Account number, credit card
26  number or debit card number, in combination with any required security code, access code or
    password that would permit access to the person's financial account.  (d) A medical identification
27  number or a health insurance identification number.  (e) A user name, unique identifier or electronic
    mail address in combination with a password, access code or security question and answer that
28  would permit access to an online account."  Nev. Rev. Stat. § 603A.040.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED
CLASS ACTION COMPLAINT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

how MGM failed to adhere to it, how that alleged failure resulted in the Security Incident, and how the Security Incident or MGM's alleged failures harmed Plaintiffs.  This is the precisely the type of conclusory allegation prohibited by *Twombly* and *Iqbal*.  *Id.*  Indeed, allowing Plaintiffs' deficient pleading to go forward here would mean every business victimized by a data breach would be deemed to have violated the FTC Act, as virtually every industry has been the "target of sophisticated cyberattacks."  *Id.*  That plainly is not the law.

### 2.    The California Unfair Competition Claim Fails

To state a claim under California's unfair competition laws ("UCL"), Plaintiffs Bohlim, Hwynn, Sedaghatpour, and Simkin (the "California Plaintiffs") must show an "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  *Kearns*, 567 F. 3d at 1127 ("Each prong of the UCL is a separate and distinct theory of liability.").  Plaintiffs fail to do so.

*First*, the UCL claim—which allows for equitable relief only—fails under the Ninth Circuit's decision in *Sonner*, as the California Plaintiffs cannot show they lack adequate legal remedies.  *Sonner*, 971 F.3d at 845; *see also Gardiner*, No. 20-cv-04618-JSW, at 11:8-12:14 (dismissing UCL claim under *Sonner*).  The UCL claim fails on that basis alone.

*Second*, the California Plaintiffs lack statutory standing to bring a UCL claim because, as shown above, they cannot show they lost money or property as a result of the Security Incident.  Cal. Bus. & Prof. Code § 17204; *Kwikset Corp v. Superior Court*, 246 P. 3d 877, 884 (Cal. 2011) (under the UCL, "private standing is limited to 'any person who has suffered injury in fact and has lost money or property' as a result of unfair competition").  The pleading requirements for "lost money or property" under the UCL are far more stringent than those required for Article III standing, and Plaintiffs do not meet them for the reasons stated above.  *Gardiner*, No. 20-cv-04618-JSW, at 8:4-16; *see also id.* at 12:19-20 (no lost money or property where, similar to here, "Plaintiff relie[d] on his allegations of overpayment, increased risk of identity theft, and time and money spent mitigating the risk of fraud").  The UCL claim fails for that additional, independent reason.

*Third*, the California Plaintiffs have not shown any unlawful, unfair, or fraudulent conduct:

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1   As to "unlawful" conduct, the California Plaintiffs cite the CRA, the CLRA, the FTC Act,

2   "and the common law." Compl. ¶ 223. The California Plaintiffs, however, fail to state violations of

3   any of those laws for reasons stated elsewhere herein.

4   As to "unfair" conduct, the California Plaintiffs repeat their vague and conclusory assertion

5   that "MGM failed to implement and maintain reasonable data security measures." Compl. ¶ 224(a).

6   Again, however, the California Plaintiffs' "vague allegations do not establish how [MGM] failed to

7   take reasonable measures to protect customer's data." *Gardiner*, No. 20-cv-04618-JSW, at 10:6-7.

8   As to "fraudulent" conduct, as stated above, the California Plaintiffs fail to plead any fraud

9   whatsoever, much less with the requisite degree of particularity. Beyond that still, the California

10  Plaintiffs fail to plead facts showing MGM had a legal duty to disclose any allegedly omitted

11  information. Comp. ¶ 208; *Daugherty v. Am. Honda Motor Co. Inc.*, 144 Cal. App. 4th 824, 825

12  (2006) (to be actionable, an omission "must be contrary to a representation actually made by the

13  defendant, or an omission of a fact the defendant was obliged to disclose"); *Donohue v. Apple, Inc.*

14  871 F. Supp. 2d 913, 925 (N.D. Cal. 2012) (rejecting "broad obligation to disclose"); *Huynh v.*

15  *Quora, Inc.*, 2020 WL 7408230, at *12 (N.D. Cal. June 1, 2020) (no duty to disclose absent

16  confidential relationship even though the defendant "touted its safeguards"). As stated above, the

17  California Plaintiffs plead no confidential or fiduciary relationship with MGM. Nor could they in

18  the context of the arm's length relationship alleged. *In re Equifax*, 362 F. Supp. 3d at 1337

19  (dismissing UCL claim predicated on omissions theory because "an arm's-length relationship by its

20  nature excludes a confidential relationship" and corresponding duty to disclose). Plaintiffs likewise

21  fail to allege any false representations by MGM, much less representations regarding data security

22  practices that it had a duty to correct. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018)

23  ("[T]o be actionable the omission must be contrary to a representation actually made by the

24  defendant, or an omission of a fact the defendant was obliged to disclose."). The UCL claim fails.

25   **3. The California Consumer Legal Remedies Act Claim Fails**

26  To plead a violation of the California Consumers Legal Remedies Act ("CLRA"), the

27  California Plaintiffs must show MGM engaged in "unfair methods of competition and unfair or

28

1  deceptive acts or practices" in a transaction "intended to result or which results in the sale…of goods

2  or services to any consumer." *Kearns*, 567 F. 3d at 1127.  They have not done so.

3      Beyond the pleading failures cited above, the California Plaintiffs fail to plead any duty to

4  disclose on the part of MGM, a prerequisite to their omissions theory.  Compl. ¶ 244; *In re Equifax*,

5  362 F. Supp. 3d at 1337; *Hodsdon*, 891 F.3d at 865.  The claim fails for that additional reason.

6              **4.     The California Customer Records Act Claim Fails**

7      To state a claim under the California Customer Records Act ("CCRA"), the California

8  Plaintiffs must show MGM failed to "implement and maintain reasonable security procedures and

9  practices appropriate to the nature of the information, to protect the personal information from

10 unauthorized access, destruction, use, modification, or disclosure." *Anderson v. Kimpton Hotel &*

11 *Rest. Grp., LLC*, 2019 WL 3753308, at *5 (N.D. Cal. Aug. 8, 2019) (quotations omitted).  They have

12 not done so.

13     The California Plaintiffs' "vague allegations do not establish how [MGM] failed to take

14 reasonable measures to protect customer's data." *Gardiner*, No. 20-cv-04618-JSW, at 10:6-7; *see*

15 *also Razuki*, 2018 WL 6018361, at *2 (dismissing CCRA claim after plaintiff "simply recited a few

16 buzz words with the hope that he may be able to figure out later what, if anything, [defendant] has

17 done wrong").  Plaintiffs' CCRA claim should be dismissed.

18              **5.     The Connecticut Unfair Trade Practices Act Claim Fails**

19     To state a claim under the Connecticut Unfair Trade Practices Act ("CUTPA"), Plaintiff

20 Taylor must show:  (1) MGM engaged in "unfair methods of competition and unfair or deceptive

21 acts or practices in the conduct of any trade or commerce" and (2) each class member claiming

22 entitlement to relief has suffered an "ascertainable loss of money or property, real or personal, as a

23 result of … [the] act or practice prohibited." *Garcia v. Fry*, 186 F. Supp. 3d 228, 233 (D. Conn.

24 2016) (citing Conn. Gen. Stat. §§ 42-110b(a), 42-110g).

25     In addition to the other failures above (failure to plead cognizable injury caused by the

26 Security Incident, as well as a failure to plead fraud with particularity), Taylor has not alleged an

27 unfair or deceptive practice.  He simply repeats Plaintiffs' vague and otherwise deficient allegations

28 concerning "reasonable data security procedures," implicit promises concerning such "procedures,"

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1  alleged nondisclosure of the fact that MGM's "procedures" were insufficient, and MGM's alleged

2  "fail[ure] to comply with common law and statutory duties."  Compl. ¶ 270(a) & (e).  Those

3  allegations, however, fail for reasons stated elsewhere herein.

### 6.    The Georgia Deceptive Trade Practices Act Claim Fails

In addition to the other reasons for dismissing the Georgia Deceptive Trade Practices Act

claim, Plaintiff Fossett's claim under Georgia's Uniform Deceptive Trade Practices Act ("Georgia's

UDTPA") fails under *Sonner*, as the "sole remedy available under the UDTPA is injunctive relief,"

and Fossett cannot show he lacks legal remedies.  *Moore-Davis Motors, Inc. v. Joyner*, 556 S.E.2d

137, 140 (Ga. Ct. App. 2001); *Catrett v. Landmark Dodge*, 560 S.E. 2d 101, 106 (Ga. Ct. App.

2002).

### 7.    The New York Section 349 Claim Fails

To state a claim under the New York General Business Law, Plaintiff Shapiro must show

MGM:  "has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3)

[the] plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Voters for

Animal Rts. v. D'Artagnan, Inc.*, 2021 WL 1138017, at *7 (E.D.N.Y. Mar. 25, 2021).  She has not

done so.

In addition to the other reasons for dismissing the New York statutory claim, Shapiro fails to

plead facts showing MGM engaged in any deceptive acts or practices.  Unable to do so with

particularity, Shapiro again relies on vague, conclusory, and otherwise deficient assertions regarding

"security measures" and "practices."  Compl. ¶ 286.  Those allegations do not meet "barebones

notice-pleading requirements," much less Rule 9(b).  *Schwartzco Enters. LLC v. TMH Mgmt., LLC*,

60 F. Supp. 3d 331, 359 (E.D.N.Y. 2014) (citing *Pelman ex rel. Pelman v. McDonald's Corp.*, 396

F. 3d 508, 511 (2nd Cir. 2005)).

### 8.    The Ohio Deceptive Trade Practices Act Claim Fails

Plaintiff Mutsko's claim under the Ohio Deceptive Trade Practices Act ("ODTPA") fails at

the outset for lack of standing.  The ODTPA explicitly "addresses commercial injury, and not

consumer injury."  *Gascho v. Glob. Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 699 (S.D. Ohio

2012); *see also Holbrook v. La.-Pac. Corp.*, 553 F. App'x. 493, 497-98 (6th Cir. 2013) (individual

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED
CLASS ACTION COMPLAINT

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

1  consumers do not have standing to bring ODTPA claims); *Terlesky v. Fifth Dimension, Inc.*, 2015

2  WL 7254189, at *3 (S.D. Ohio Nov. 17, 2015) (individual consumer "does not have standing to

3  commence a civil action under the ODTPA").  As an individual consumer, Plaintiff lacks statutory

4  standing under the ODTPA.

5  **9.     The Oregon Unlawful Trade Practices Act Claim Fails**

6  In addition to the other failures cited above (failure to plead cognizable injury caused by the

7  Security Incident, as well as a failure to plead fraud with particularity), Plaintiff Dvorak has not

8  alleged an "unlawful trade practice."  Rather, Plaintiff Dvorak recycles Plaintiffs' vague and

9  otherwise deficient allegations concerning "reasonable data security measures," implicit promises

10  concerning "data security practices," and the alleged nondisclosure of the fact that MGM's

11  "practices" were insufficient and noncompliant.  Compl. ¶ 321(b) and (d).  Those allegations,

12  however, fail for reasons stated elsewhere herein.

13  Dvorak also claims MGM violated the Oregon UTPA because it violated Oregon's

14  Consumer Information Protection Act.  Compl. ¶ 322.  Dvorak, however, cannot do so.  Only the

15  Attorney General can enforce that statute.  *See*, *e.g.*, *Horton v. Nelson*, 288 P.3d 967, 972 (Or. Ct.

16  App. 2012) ("The statute does not create a private right of action for violations of ORS 646.607.

17  Instead, those violations are prosecuted by the state.").  Because Plaintiff cannot enforce Oregon's

18  Consumer Information Protection Act, MGM's alleged violation thereof cannot serve as a predicate

19  unlawful practice.  *Patton v. Experian Data Corp.*, 2018 WL 6190349, at *10 (C.D. Cal. Jan. 23,

20  2018) (dismissing Oregon UDTPA claim predicated on alleged violation of Oregon's Consumer

21  Information Protection Act because no private right of enforcement existed under Oregon's

22  Consumer Information Protection Act).

23  **10.    The Oregon Consumer Information Protection Act Claim Fails**

24  Dvorak's claim under the Oregon Consumer Information Protection Act fails because, as

25  stated above, it does not contain a private right of action.  *See supra* Section IV(H)(9); *see also*

26  *Horton*, 288 P.3d at 972; *Patton*, 2018 WL 6190349, at *10.  Accordingly, this claim fails.

27

28

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED
CLASS ACTION COMPLAINT

## V. **CONCLUSION**

Plaintiffs have not and cannot plead any cognizable damages or harm, much less facts establishing any wrongdoing on the part of MGM from the disclosure of what amounts to nothing more than "phone book" information, untethered to any causally related financial or other compensable harm.  The mere fact of the Security Incident is not sufficient to infer the breach of a legal duty or create cognizable harm or resulting compensable damages.  Plaintiffs have failed to plausibly allege negligence, which would be barred by the economic loss rule in any event.  There is no fraud, there is no unspoken or unwritten contract that MGM breached, and there is no other plausible basis to hold MGM liable under the facts alleged.  Absent these critical elements of breached legal duty, causally related harm and resulting compensable damages, the Court should dismiss Plaintiffs' complaint in its entirety.

Dated:  June 1, 2021

PISANELLI BICE PLLC


By:   /s/ Robert A. Ryan
  Todd L. Bice
  Robert A. Ryan
  Attorneys for Defendant
  MGM RESORTS INTERNATIONAL


HUNTON ANDREWS KURTH LLP
  Ann Marie Mortimer
  Neil K. Gilman
  Jason J. Kim
  Attorneys for Defendant
  MGM RESORTS INTERNATIONAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED
CLASS ACTION COMPLAINT

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of PISANELLI BICE PLLC and that, on this 1st day of June, 2021, I caused to be served a true and correct copy of the above and foregoing **DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT** via the Court's CM/ECF service system.

_/s/ Shannon Dinkel_
An employee of PISANELLI BICE PLLC

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

DEFENDANT MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT