Douglas J. McNamara
(Admitted *Pro Hac Vice*)
**COHEN MILSTEIN SELLERS & TOLL, PLLC**
1100 New York Ave,
5th Floor
Washington, DC 20005
Tel.: 202-408-4600
Fax: 202-408-4699
dmcnamara@cohenmilstein.com
*Counsel for Plaintiffs Delores Scott and Ryan Bohlim*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| In re: MGM Resorts International Data Breach Litigation<br><br>This Document Relates To: All actions. | Master File No.: 2:20-cv-00376-GMN-NJK<br><br>**JOINT STIPULATION AND [PROPOSED] ORDER GOVERNING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

IT IS HEREBY STIPULATED by and between the parties in this action, by and through their counsel of record, as follows:

WHEREAS, documents and information have been and may be sought, produced or exhibited by and among the parties to this action.

WHEREFORE, the parties seek an Order of this Court entering the parties' agreements on discovery of electronically stored information ("ESI"), as reflected in the following terms:

1. This stipulation shall govern the production of documents and ESI by the parties in the above-captioned litigation as a supplement to the Federal Rules of Civil Procedure, this Court's rules, and any other applicable orders and rules in cases filed in or consolidated before this Court in this action, and to every action that is or will in the future become a part thereof (collectively the "Litigation").

1

JOINT STIPULATION AND [PROPOSED] ORDER GOVERNING THE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
Case No.: 2:20-cv-00376-GMN-NJK

## I. **SCOPE**

1. The parties shall meet and confer to try to resolve any disputes that may arise under this Protocol prior to seeking assistance from the Court.

2. The parties do not waive any objections to the production, discoverability, or confidentiality of data or any other discovery materials, including without limitation, objections regarding the burden, overbreadth, cost-sharing, or relevance of document requests related to data in a form specified in this Protocol.

3. Nothing herein shall alter the parties' respective responsibility to comply with the applicable Federal Rules of Civil Procedure and any applicable Local Rules regarding the collection or production of data. This Protocol shall neither enlarge, reduce, nor otherwise affect the scope of discovery in this litigation as imposed by the Court's orders nor imply that discovery produced under the terms of this Protocol is properly discoverable, relevant, or admissible in the Action or in any other litigation.

4. In the event the Receiving Party, including any Counsel, Professional Vendor, Expert or other party engaged by the Receiving Party in this Action, experiences a data breach, it shall (to the extent permitted by law) notify the Producing Party as soon as reasonably practicable of the same, and shall reasonably cooperate with the Producing Party to address and remedy the breach, subject to the Producing Party's reasonable instructions. Nothing herein shall constitute a waiver of legal rights and defenses regarding the protection of information from unauthorized disclosure.

## II. **DEFINITIONS**

1. "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term in the Federal Rules of Civil Procedure. For avoidance of doubt, the term "Document" shall include hard copy Documents maintained in paper or other tangible form and ESI.

2. "Document family" means a collection of pages or files maintained together and stored as a single unit constituting a logical single communication of information but consisting of more than a single stand-alone record. Examples include a fax cover, the faxed letter, and an

attachment to the letter—the fax cover being the "parent," and the letter and attachment being a "child," or an email and associated attachments, or a presentation with embedded files.

3. "Custodian" shall mean any individual of a Producing Party identified as likely having possession, custody, or control of potentially relevant Documents.

4. "Custodial data source" means any location kept or maintained by a particular custodian and used for business purposes in or on which the custodian may store potentially relevant Documents including, but not limited to, computers, laptops, tablets, and/or mobile devices regularly used for business purposes, email (whether stored locally or centrally), shared network servers, shared or individual network folders, or cloud storage systems.

5. "Non-custodial data source" means any data source that is not kept or maintained by any particular custodian but which may contain relevant Documents, including data sources used by any department, business unit, or division of a Producing Party, and shared storage systems that may contain relevant Documents.

6. "Metadata" means: (i) information embedded in or associated with a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, custody, usage, and/or validity of the electronic file; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

7. "Search term" means a word or a combination of words or phrases designed to capture potentially relevant Documents and may include, depending on the capability of the data sources or processing engine, strings of words or phrases joined by proximity and Boolean connectors or other syntax.

8. "TAR" (technology-assisted review) means a machine learning process for prioritizing or coding a collection of Documents.

9. "Structured data" means data that resides in a fixed field within a record or file, or stored in a structured format, such as databases (such as SAP, JD Edwards, Microsoft Dynamics, Oracle, SQL, Microsoft Access) or data sets, according to specific form and content rules as defined by each field of the database.

### III.   PRESERVATION

1. The parties acknowledge that they have an obligation to take reasonable steps to preserve potentially discoverable materials. The Parties acknowledge that the proportionality standard forth in Fed. R. Civ. P. 26(b)(1) applies to the discovery process in this action, including the identification of custodians, relevant subject matter, time periods for discovery and other parameters.  The parties agree that preservation of potentially relevant materials will be reasonable and proportionate.

### IV.   PRODUCTION FORMAT

1. To the extent feasible, productions will comply with Exhibit A: Metadata Fields for Electronic Discovery, as well as the below parameters.

2. The parties will produce Documents via secure file transfer protocols (e.g., FTP) or similar secure electronic transmission. If a Producing Party encrypts or "locks" the production, the Producing Party shall send, under separate cover or email, an explanation of how to decrypt the files.

3. ESI will be produced as single-page, black and white, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet type files, presentation type files such as PowerPoint files, database files, audio files, and video files, which shall be produced in native format, unless they contain privileged information or information subject to any other applicable protection. If documents that the parties have agreed to produce in native format need to be redacted and cannot be redacted in TIFF in a readable manner, the parties will meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

4. For each document, a text file containing the extracted text shall be provided along

with the TIFF, when such text exists. The filename for the text file should be identical to the first image of the corresponding document, and the text file should be linked directly to its corresponding record in the metadata load file using the TEXTLINK field.

5. Each image should have a unique file name. For single-page TIFFs, the unique file name will be the Bates number of the page. For native files, the unique file name will be the Bates number of the document.

6. Any document produced in native format shall be produced with a single page Bates-stamped TIFF image slip-sheet stating the document has been produced in native format and noting the document's confidentiality designation. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field.

7. To the extent that a document contains tracked changes or comments, the document should be imaged showing tracked changes and comments. TIFF images of email messages should include the BCC line.

8. To the extent that either party believes that specific documents or classes of documents, not already identified within this ESI Order should be produced in native format, or that have been produced in TIFF format but are not reasonably usable, the parties agree to meet and confer in good faith as to the production of those Documents in an alternative or native format. A party shall not make unduly burdensome and unreasonable requests for production of Documents in native format, and a party shall not unreasonably refuse a request to produce Documents in native format.

9. <u>Bates Numbering</u>. All images must be assigned a unique and sequential Bates Number. Bates numbers shall be unique IDs with a prefix that can be readily attributed to the Producing Party. The confidentiality designation (if any) corresponding to the confidentiality designations defined in the Protective Order shall appear on each page. Documents produced in

native format shall be produced with a file name indicating the Bates number of the file and including any confidentiality designation in the file name.

10. <u>Parent-Child Relationships</u>. Responsive non-privileged ESI attached to, or embedded within, another electronic Document, and which has not been produced in its native form, are to be produced sequentially immediately after the parent Document to preserve the parent-child relationship between attachments, enclosures, embedded files, and/or exhibits to any parent Document. If a parent or child is omitted from production as privileged or otherwise, the producing party shall produce in place of the Document a single-TIFF placeholder image indicating the withholding of the Document and the reason for the withholding. For all such withheld children Documents, the Producing Party will still provide the metadata associated with that document as listed in Exhibit A. However, non-substantive embedded content, such as logos, may be suppressed and do not need to be produced or slipsheeted. When producing responsive attachments, the parent email will be produced, regardless of responsiveness unless otherwise protected from disclosure.

11. <u>Hyperlinked Pointers</u>. Documents containing internal hyperlinks pointing to Documents on a system within a Producing Party's custody, possession, or control (*e.g.*, such as an internal document management system, Google Drive, Google Docs, SharePoint, Office365, or similar document hosting and collaboration service) are not considered within the same family group as the Document residing at the location to which that hyperlink points. If there are particular key Documents containing hyperlinks where the Document to which that hyperlink points cannot be located in the production, the Receiving Party may submit a list of such Documents by Bates number to the Producing Party, and the Producing Party will engage in reasonable efforts to locate the Document at that pointed location and either identify it by Bates number or provide it if not already produced and not privileged.

12. <u>De-Duplication</u>. If a producing party elects to de-duplicate, the producing party shall identify duplicates by the MD5 hash algorithm (or a reasonably equivalent alternative) to create and compare hash values for exact duplicates only. Attachments should not be eliminated as duplicates

for purposes of production, unless the parent email and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field should not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Custodian-specific de-duplication may be applied to email files prior to upload to the review platform. Any other de-duplication should be done across the entire collection (i.e., global level) and the "All Custodian" field should list each custodian who was a collected source of that Document. The "Custodian" field shall represent the custodian of the initial Document uploaded to the review platform. Should the All Custodians metadata field produced become outdated due to rolling productions, an overlay file providing all the custodians for the affected documents will be produced prior to or shortly after substantial completion of the document production.

13. <u>Email Thread Suppression</u>. Each party may also de-duplicate emails in such a way as to eliminate earlier or incomplete chains of emails and produce only the most complete iteration of an email chain and any unique attachments associated with the email set, provided that none of the earlier emails in the chain contained alternative attachments and the email chain does not exclude any email conversations that split off from the primary thread.

14. <u>Redacted Documents</u>. Documents may be redacted to omit privileged information, personal identifying information (PII) of Plaintiffs and putative class members, information protected or required to be redacted by law, and information within the scope of Federal Rule of Civil Procedure 5.2. To the extent any native file contains information subject to a claim of privilege or any other applicable protection that requires redactions, the producing party shall either apply the redactions directly on the native file itself or convert that file to TIFF format and produce it with the necessary redactions. If converting a Document to TIFF would render it difficult to read or use, the parties will meet and confer to negotiate an appropriate format for production. Certain documents may be difficult to redact, such as voluminous Excel spreadsheets. Should redactions to a document result in the document becoming difficult for the Receiving Party to review, the Receiving Party may inform the Producing Party and the Parties will meet and confer to discuss a reasonable format

for production of such documents. To the extent a Document is redacted, text files for such a Document shall not contain text for redacted portions. The original unredacted native file shall be preserved pending conclusion of the action.

15. <u>Redactions for Non-Responsive Content</u>. The parties shall generally not redact or withhold responsive Documents on the basis that they contain irrelevant information. The parties agree to meet and confer over permissibility of redaction of specific groupings of documents containing sensitive, non-relevant information, including but not limited to trade secrets, or information regarding products, data, or people, within documents that contain other relevant information.

16. <u>Metadata and Text Files</u>. To the extent feasible, all ESI should be produced with a delimited, database load file that contains the applicable metadata fields listed in Exhibit A hereto. However, nothing in this Stipulated Order requires the parties to create or supply metadata that is not maintained in the usual course of business, with the exception of the following: (a) ProdBegDoc, (b) ProdEndDoc, (c) ProdBegAttach, (d) ProdEndAttach, and (e) Custodian, which should be populated by the party or the party's vendor. Further, the parties are not required to preserve metadata fields that are frequently updated in the ordinary course of business, such as last-opened dates. An .opt image cross-reference file should also be provided for all TIFF images. The extracted text of the Document shall also be produced.

17. <u>Corrupted or Unreadable Files</u>. Each party may exclude certain files that are corrupted or not readable.

18. <u>System Files</u>. ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Software & Technology. Other file types may be added or removed from the list of excluded file types by agreement of the parties. This provision is not intended to waive the parties' right to seek production of specific files or file types that would otherwise be excluded by this provision.

19. <u>Third-Party-Produced Material</u>. Notwithstanding anything to the contrary herein, any party that produces Documents produced to it by a third party, such as in response to a subpoena, must produce such Documents in the format in which they were produced by the third party. If the subpoenaed third party makes known that it produces documents subject to disclosed keywords, date restrictions, or other limiting factors, the initial Receiving Party will disclose the subpoenaed non-party's culling limitations to the other party upon re-production of the subpoenaed non-party's production.

20. <u>Color.</u> Documents containing color need not be originally produced in color. If an original Document contains color useful to understand the meaning or context of the Document, however, the Producing Party shall honor reasonable requests for either the production of an original Document for inspection and copying, or production of a color image of the Document. The Producing Party shall have the option of responding by producing a native-file version of the Document. Nothing in this Order shall preclude a Producing Party from objecting to such requests as unreasonable in number, timing, or scope, provided that a Producing Party shall not object if the Document as originally produced is illegible or difficult to read.

21. <u>Hard Copy Documents</u>. In scanning hard copy Documents, the Producing Party must make reasonable efforts to preserve the unity of the Documents as maintained in a party's ordinary course of business. Hard copy Documents should be scanned as TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the fields outlined in Exhibit A to the extent this information is collected by the party or the party's vendor as a matter of course. OCR text files shall be provided as a single document-level text file for each document, named after the Bates number on the first page of that document. Hard copy Documents should be physically unitized. If a producing party reasonably believes that production of hard copy Documents is unduly burdensome, the producing party shall seek to meet and confer in good faith with the requesting party regarding content, volume, and related issues before any production of hard copy Documents.

22. <u>Original Language</u>. All Documents shall be produced in their original language. All extracted text must be produced in a Unicode compliant format in the load file. Nothing in this agreement shall require a producing party to prepare a translation, certified or otherwise, for foreign language Documents that are produced in discovery.

23. <u>Request Identification</u>. Production of hard copy Documents and ESI in the reasonably usable form set out in this ESI Order need not include any reference to the requests to which a document or ESI may be responsive.

**V.   CUSTODIANS AND SEARCH METHODOLOGY**

1. <u>Structured Data Sources</u>. To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database, the parties will meet and confer to discuss the most appropriate and cost-effective production format, which may include an export of data.

2. <u>Determination of Custodians</u>. The parties shall attempt, through a process of cooperative negotiation, to reach agreement on the appropriate custodians. The Producing Party shall make good faith efforts to provide reasonable information concerning potential custodians as necessary to facilitate these discussions.

3. <u>Custodial and Non-Custodial Data Source Collection</u>. To achieve proportional and cost-effective discovery, the parties agree that limitations on the scope of the search (e.g., time frames, document types, keywords, etc.) may be employed by the parties to reasonably cull out non-responsive information. If search terms are used, the Producing Party will disclose those search terms to the requesting party. If the Requesting Party in good faith believes additional search terms are likely to yield additional unique, relevant information, the Requesting Party may propose additional search terms. In that event, the parties agree to meet and confer about the anticipated benefits and burdens of those additional proposed search terms. If disputed terms still exist at the end of the meet and confer process, the parties will submit those terms to the Court in the form of a joint discovery letter with a discussion of the relevance and/or burden associated with those search

terms. If some other method of limitation is used to cull responsive data, the Producing Party will disclose the method to the Requesting Party. A party may also choose to use TAR to identify documents responsive to Fed. R. Civ. P. 34 requests. Any party using TAR to identify documents that will not be subjected to potential review or production agrees that as early as reasonably practicable (and in any event prior to reliance on such tools) it will disclose to the opposing parties the type of technology it will be using and a general description of the TAR methodology that will be used. Consistent with The Sedona Conference Principles, Principle 6, the responding party is best suited to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own documents and ESI.

    4. <u>Reservation of Right to Review</u>. Nothing in this ESI Order may be construed or interpreted as precluding a Producing Party from conducting responsiveness review and/or analysis to determine if documents captured by search terms or analytics are in fact responsive to the Requesting Party's request. Similarly, nothing may be construed or interpreted as precluding a Producing Party from conducting a privilege review and/or analysis of documents determined to be relevant by any means.  Further, nothing in this ESI Order may be construed or interpreted as requiring the production of all documents captured by any search term or analytics if that document is in good faith and reasonably deemed not responsive to the Requesting Party's request and/or privileged.

**VI.** **<u>ASSERTIONS OF PRIVILEGE</u>**

    1. Pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure, the parties hereby agree that a producing party may redact or withhold a Document if it is protected by attorney-client privilege, the work-product doctrine, or any other reasonably applicable privilege from disclosure. Any party that withholds otherwise discoverable information (including by redaction) by claiming that the information is privileged, must produce a log in compliance with Federal Rule of Civil Procedure 26(b)(5), subject to the negotiated exclusions in paragraphs 2, 3, and 4 below.

2. To reduce burden and costs, a party need include only one entry on the privilege log to identify withheld emails that constitute an uninterrupted dialogue between or among individuals, provided all participants (*i.e.*, persons, addresses, or aliases on the to/from/cc/bcc lines) on any part of the email are identified unless not required under paragraph 3 below.

3. To reduce burden and costs, the parties do not need to log communications with outside counsel dated after the filing of the first complaint in this Action that are protected by attorney-client or work product privilege.

4. To reduce burden and costs, the parties do not need to log Documents produced with redactions that identify the basis of the redaction (*e.g.*, attorney-client privilege, work-product protection) or for which the redaction assertion is included in a load file field, provided that the following fields on redacted emails remain unredacted: from, to, cc, bcc, date, subject. If a party redacts a document, the accompanying metadata should so indicate.

5. For all privilege withheld documents not subject to the exclusions in paragraphs 2, 3 or 4, the privilege log will provide the following information, to the extent it is reasonably available and not itself subject to a claim of privilege:

   a. a PrivID field (sequential number associated with each privilege log record;
   b. the beginning Bates number, if the document has been assigned any such document numbers;
   c. the date of the Document;
   d. the type or nature of the privilege asserted (e.g., attorney-client privilege; work product doctrine);
   e. the email subject or filename of the document;
   f. the identity of all persons who authored, signed or otherwise prepared the document;
   g. the identity of all persons designated as addressees;

      h. the identity of all other recipients of the document, including those carbon copied or blind carbon copied;

      i. a simple topic category that describes the general nature of the privileged subject matter.

6. All attorneys (or other legal personnel) reflected on the privilege log should be identified by either designation with an asterisk ("*") or a separate legend of names and affiliation.

7. If the requesting party requires further information to substantiate the privilege of any specific document withheld or redacted for privilege, it shall identify by Bates number each document for which it requests additional information. In response, the producing party must either (i) provide the requested information or (ii) challenge the request. If the producing party challenges the request for further information, the parties shall meet and confer to try to reach a mutually agreeable solution prior to requesting any dispute be heard by the Court.

8. Privilege logs shall be produced within 30 days after substantial completion of production of documents in connection to a specific set of RFPs. The Parties will endeavor to provide privilege logs containing a specific custodian's withheld documents at least 14 days before the deposition of that custodian.

9. Nothing in this Protocol shall be interpreted to require disclosure of relevant information or data that is protected by the attorney-client privilege, work-product doctrine, or is prohibited from disclosure under any law, regulation, rule, court order, or any other reasonably applicable privilege or protection. The parties do not waive any objections to the production, discoverability, or confidentiality of data or any other discovery materials, including, without limitation, objections regarding the burden, overbreadth, or relevance of Document requests related to data in a form specified in this Protocol.

## VII. MODIFICATION

1. This Order may be modified by agreement of the parties or by the Court for good cause shown.

**ORDER**

IT IS SO ORDERED:

_____
HON. NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE

DATED: _____

DATED:  March 21, 2023

Respectfully submitted,

*/s/ Douglas McNamara*

Douglas J. McNamara
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave, 5th Floor
Washington, DC 20005
Tel.: 202-408-4600
Fax: 202-408-4699
dmcnamara@cohenmilstein.com


Claire L. Torchiana
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Tel.: 212-838-7797
Fax: 202-838-7745
ctorchiana@cohenmilstein.com

John A. Yanchunis
Jean Sutton Martin
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel.: 813-223-5505
Fax: 813-223-5402
jyanchunis@forthepeople.com
jeanmartin@forthepeople.com

1  David M. Berger
   Jeff B. Kosbie
2  GIBBS LAW GROUP LLP
   1111 Broadway, Suite 2100
3  Oakland, CA 94607
   Phone: (510) 350-9711 (direct)
4  Fax: (510) 350-9701
   dmb@classlawgroup.com
5  jbk@classlawgroup.com

6
   E. Michelle Drake
7  BERGER MONTAGUE PC
   43 SE Main Street, Suite 505
8  Minneapolis, MN 55414
   Tel.: 612-594-5999
9  Fax: 612-584-4470
   emdrake@bm.net
10

11 Miles N. Clark (NBN 13848)
   Law Offices of Miles N. Clark, LLC
12 5510 S. Fort Apache Rd, Suite 30
   Las Vegas, NV 89148-7700
13 Phone: (702) 856-7430
   Fax: (702) 552-2370
14 Email: miles@milesclarklaw.com

15
   Don Springmeyer (NBN 1021)
16 KEMP JONES LLP
   3800 Howard Hughes Pkwy, 17th Fl.
17 Las Vegas, NV 89165
   Telephone: 702-385-6000
18 Facsimile: 702-385-6001
   d.springmeyer@kempjones.com
19

20

21

22

23

24

25

26

27                                    15
   JOINT STIPULATION AND [PROPOSED] ORDER GOVERNING THE DISCOVERY OF
28                    ELECTRONICALLY STORED INFORMATION

                          CASE NO. 2:20-CV-00376-GMN-NJK

*/s/ Brianna Smith*
Todd L. Bice (NBN 4534)
Brianna Smith (NVN 11795)
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone: (702) 214-2100
TLB@pisanellibice.com
BGS@pisanellibice.com

Ann Marie Mortimer (pro hac vice)
Jason J. Kim (pro hac vice)
HUNTON ANDREWS KURTH LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone: (213) 532-2000
Facsimile: (213) 532-2020
amortimer@HuntonAK.com
kimj@HuntonAK.com

Neil K. Gilman (pro hac vice)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20037-1701
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
ngilman@HuntonAK.com

JOINT STIPULATION AND [PROPOSED] ORDER GOVERNING THE DISCOVERY OF
ELECTRONICALLY STORED INFORMATION

CASE NO. 2:20-CV-00376-GMN-NJK

**Exhibit A**

**Metadata Fields for Electronic Discovery**

| Field Name | Description | Field Type | Field Value | Non-Email Documents | Emails |
|---|---|---|---|---|---|
| ProdBegDoc | Starting Bates (including prefix) | Text | 255 | X | X |
| ProdEndDoc | Ending Bates (including prefix) | Text | 255 | X | X |
| ProdBegAttach | Starting Bates number of first attachment (including prefix), if applicable | Text | 255 | X | X |
| ProdEndAttach | Ending Bates number of last attachment (including prefix), if applicable | Text | 255 | X | X |
| Custodian | Custodian or Source, formatted Last, First or ABC Company | Long Text | Unlimited | X | X |
| All Custodian | Other custodians whose files contained a particular Document eliminated through de-duplication | Long Text | Unlimited | X | X |
| Author | Author of Document, formatted Last, First[1] | Long Text | Unlimited |  | X |
| Email_To | Recipient, formatted Last Name, First Name | Multiple Choice | Unlimited |  | X |
| Email_From | Author of email formatted, Last Name, First Name | Single Choice | Unlimited |  | X |
| Email_CC | Carbon Copy Recipients, formatted Last Name, First Name | Multiple Choice | Unlimited |  | X |
| Email_BCC | Blind Carbon Copy Recipients, formatted | Multiple Choice | Unlimited |  | X |

---

[1] Data will be formatted in the manners identified herein to the extent information needed for such formatting is readily available.

JOINT STIPULATION AND [PROPOSED] ORDER GOVERNING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION

CASE NO. 2:20-CV-00376-GMN-NJK

| Field Name | Description | Field Type | Field Value | Non-Email Documents | Emails |
|---|---|---|---|---|---|
| | Last Name, First Name | | | | |
| DateSent | Date Email was sent, formatted MM/DD/YYYY | Date | MM/DD/YYYY | | X |
| TimeSent | Time Email was sent | Text | 10 | | X |
| Subject | Subject Line of Email | Long Text | Unlimited | | X |
| AttachCount | Number of attachment(s) | Numerical | | | X |
| AttachName | Name of attachment(s) | Text | | X | X |
| Date Last Modified | Date modified property extracted, representing the date and time that changes to the document were last saved | Date | MM-DD-YYYY | Populated for attachments and loose files | |
| Date Last Printed | Date last printed extracted from the original file | Date | MM-DD-YYYY | X | |
| NativeLink | Current File Path location to the Native File | Long Text | Unlimited | X | X |
| TextLink | Current File Path location to the .txt File | Long Text | Unlimited | X | X |
| File Name | Name of Original File | Text | 255 | X | X |
| Original File Extension | Character extension identified by the file header | text | | X | |
| Hash | MD5 Hash Value | Text | 255 | X | X |
| Redaction | Document contains redaction(s) | Text | 255 | X | X |
| Confidentiality | Confidential Status of Document | Text | 255 | X | X |
| Conversation ID | Email thread created by the email system – 44 character string of numbers and letters that is created in the | Text | | | X |
18

JOINT STIPULATION AND [PROPOSED] ORDER GOVERNING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION

CASE NO. 2:20-CV-00376-GMN-NJK

| Field Name | Description | Field Type | Field Value | Non-Email Documents | Emails |
|---|---|---|---|---|---|
| | initial email and has 10 characters added for each reply or forward for an email | | | | |
| Date Created | Date created property extracted from the original file or email message | Date | MM-DD-YYYY | attachments and loose files | |
| Date Received | Date that the email message was received, according to original time zone | Date | MM-DD-YYYY | | X |
| Original Folder Path | original folder path of file or folder name for paper documents | Text | | X | x |
| Title | Title information saved in metadata of document | Text | | X | |

JOINT STIPULATION AND [PROPOSED] ORDER GOVERNING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION

CASE NO. 2:20-CV-00376-GMN-NJK